AGENCY RENT A CAR SYSTEM, INC., Avis, Inc., and Avis Rent A Car System, Inc., Plaintiffs,

v.

GRAND RENT A CAR CORP., Hayes Leasing Company, Inc., Shore Rentals, Inc., Rent–A–Car Co., Inc., Car & Truck Rentals, Inc., Motorent, Inc., General Car and Truck Leasing System, Inc., Ness Rent A Car, Inc., Baker Car and Truck Rental, Inc., Auto Rent, Inc., Checker Leasing, Inc., and, Coastal Bend Rent A Car, Inc., individually and on behalf of all others similarly situated, Defendants.

No. CV–95–3850 (DRH).

United States District Court, E.D. New York.

Feb. 13, 1996.

Morrison Cohen Singer & Weinstein, LLP, New York City by Malcolm I. Lewin, Sarah C. Lichtenstein, for Plaintiffs.

Latham & Watkins, New York City by Job Taylor, III, for Defendant Grand Rent A Car Corp.

Akin, Gump, Strauss, Hauer & Feld, LLP, New York City by Steven M. Pesner, David M. Zensky, for all other Defendants.

## ORDER

HURLEY, District Judge.

This declaratory judgment action arises from a dispute among the parties over whether the actions of Avis Rent A Car System, Inc. ("ARACS"), in acquiring the business conducted by Agency Rent A Car System, Inc. ("Agency"), violates licensing agreements between ARACS and its licensees. Currently before the Court are motions by Defendant Grand Rent A Car Corp. ("Grand"), and all other named Defendants to dismiss the action for lack of personal and subject matter jurisdiction.[1] Additionally, all Defendants other than Grand move to dismiss this action for insufficiency of service of process and for failure to state a claim upon which relief can be granted. For the reasons that follow, the motions to dismiss for lack of personal jurisdiction over each of the Defen-

---

1. Defendant Grand and all other Defendants are hereinafter collectively referred to as "Defen-

dants are granted, and the action is dismissed.

## Background

The pertinent facts, set forth below, are undisputed or appear from the complaint or plaintiffs' affidavits. For the purposes of the instant motions to dismiss on jurisdictional grounds, they are accepted as true. *See Moyers v. Brown,* 1990 WL 3183, 1990 U.S.Dist. LEXIS 224 (Jan. 8, 1990 S.D.N.Y.) (Haight, J.) (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir. 1985)).

### A. The Parties

Plaintiffs Avis, ARACS and Agency (collectively, "Plaintiffs") are each Delaware corporations with their principal places of business in Garden City, New York. (Compl. ¶¶ 4–6.) ARACS is a wholly-owned subsidiary of Avis. (*Id.* ¶ 6.)

Each Defendant is a foreign corporation, with its principal place of business as follows: Grand, El Segundo, California; Hayes Leasing Co. ("Hayes"), Dallas, Texas; Shore Rentals, Inc. ("Shore"), Matawan, New Jersey; Rent–A–Car Co., Inc. ("Rent–A–Car"), Richmond, Virginia; Car & Truck Rentals, Inc. ("Car & Truck Rentals"), Birmingham, Alabama; Motorent, Inc. ("Motorent"), Nashville, Tennessee; General Car and Truck Leasing System, Inc. ("General"), Davenport, Iowa; Kal–Co. Rental & Leasing, Inc. ("Kal–Co"), Kalamazoo, Michigan; Ness Rent A Car, Inc. ("Ness"), Fargo, North Dakota; Baker Car and Truck Rental, Inc. ("Baker"), Little Rock, Arkansas; Auto Rent, Inc. ("Auto Rent"), Amarillo, Texas; Checker Leasing ("Checker"), Roanoke, Virginia; Coastal Bend Rent A Car, Inc. ("Coastal Bend"), Corpus Christi, Texas.

### B. Facts Underlying the Present Dispute

#### 1. Defendants' Contacts with New York

ARACS has entered into exclusive licensing agreements with each of the respective

dants."

Defendants that provide, *inter alia*, for covenants by the licensee concerning: i) the provision, by the licensee, of monthly reports regarding the total time and mileage charges assessed and the number of vehicles rented and available for rental by the licensee; ii) the uniform provision by the licensee of liability, fire, theft and collision insurance to renters; iii) use of an ARACS Standard Rental Agreement; iv) compliance with, *inter alia*, the Avis System Operator's Manual and other directives from ARACS; v) inspection of the licensee's premises and pertinent records by ARACS; vi) payment by the licensee of administrative and advertising fees; and vii) subscription to a national advertising campaign conducted by an Advertising and Policy Committee, composed of members elected by the licensees and appointed by ARACS. (*See* "Exclusive License Agreement" attached as Ex. 1 to Compl. §§ 3, 4, 5.)

The license agreements further provide covenants by ARACS to provide assistance in advertising and the procurement of large-scale accounts, to avail the licensee of optional participation in manufacturers' vehicle fleet programs, and to permit the licensee to use the Avis name. (*See id.* § 6.) Additionally, pursuant to a separate agreement, licensees utilize a computerized central reservation system known as the Wizard System. (*See* Compl. § 10.b.)

Finally, four business organizations that service the needs of ARACS and its licensees, including Defendants, have offices in New York: i) the Avis Licensee Association ("Licensee Association"); ii) the Advertising & Policy Committee (the "A & P Committee"); iii) the Avis System Advertising Trust (the "Trust"); and iv) Vehicle Services of America, Ltd. ("VSA"). (Pls.' Mem.Opp. ¶ 6.)

The first organization, the Licensee Association, is a Texas corporation with its offices in Mineola, New York. (*See* Klyce Oct. 19, 1995 Aff.Supp. ¶ 20.) Robert Klyce ("Klyce"), President of Car & Truck Rentals, is its President, and C. Kenneth Wright ("Wright"), Chairman of Rent–A–Car, is its Chairman. (*Id.*) In addition to other functions, the Licensee Association facilitates cooperative purchase programs on behalf of the licensees who are dues-paying members. (*See id.* ¶ 21.)

Second, the Trust "was organized to be utilized by [ARACS] and its Licensees whereby certain costs common to both parties (such as advertising and reservation processing) would be charged to and paid by the Trust." (*See* Financial Statement, Avis System Advertising Trust, attached as Ex. 4 to Compl., at 3.) The Trust is a Massachusetts corporation with an office in Mineola, New York. According to Wright, Chairman of the Trust, the "day-to-day" executive needs of the Trust are conducted in Virginia, where Wright maintains his office. (Wright Nov. 17, 1995 Aff.Reply ¶ 7.)

Through contributions directly from ARACS, and indirectly through ARACS from a percentage of fees paid to ARACS by licensees, the Trust funds the activities of the third organization, the A & P Committee. (*See* Wright Oct. 17, 1995 Aff.Supp. ¶ 25.) The A & P Committee is an unincorporated association with its office in Mineola, New York; seven of its members are elected by licensees, and six are appointed by ARACS. (*Id.* ¶ 21.)

The fourth entity, VSA, is a Delaware corporation with an office in Mineola, New York. (*See* Collins Nov. 10, 1995 Aff.Opp. ¶ 9.) According to Wright, a Director of VSA, VSA negotiates purchasing programs, which are then made available to ARACS licensees. (*See* Wright Aff.Reply ¶ 12.) Licensees, in turn, independently arrange their own purchasing. (*Id.*)

### 2. *The Instant Controversy*

According to the Complaint, ARACS informed its licensees of its intention to acquire the "Agency Business," which involves "renting replacement cars to insurance companies, auto body repair shops, automobile dealers and individual customers when the customer's own car is stolen or damaged...." (Compl. ¶ 25.b.) The Complaint further alleges that the Agency Business is a separate "niche market" for "insurance replacement" rentals, (*id.* ¶ 26), but that "defendants [have] asserted that the conduct of the Agency

Business violates their License Agreements insofar as Agency Business locations situated in their territories are involved." (*Id.* ¶ 30.) Further, "[t]hey have made several demands or threats including that Agency dispose of or close locations of the Agency Business in such licensees' territories or turn over such locations to them and generally agree not to open or expand an Agency Business location in their territories in the future." (*Id.*)

According to Plaintiffs, on or about September 7, 1995, Avis Executive Vice Presidents Charles Bovino ("Bovino") and James Collins ("Collins") "had conversations with Wright, Klyce and an attorney representing Grand and Hayes regarding the Agency Business acquisition[.]" (*Id.* ¶ 32.) During those conversations, Plaintiffs learned that the licensees' retained counsel believed that the conduct of Agency Business within any licensee's territory would constitute a breach by ARACS of its license agreement with that licensee. (*Id.* ¶ 32.b–c.) Finally, according to Plaintiffs, the licensees' legal counsel "stated that if, on the basis of their demands, no solution were reached, litigation would be commenced to stop plaintiffs from operating the Agency Business locations within the ARACS licensees' territories." (*Id.* ¶ 32.d.) It is undisputed that this meeting took place in Dallas, Texas. (*See* Collins Nov. 10, 1995 Decl. ¶ 25.)

On September 22, 1995, Plaintiffs commenced the instant action, seeking declaratory and injunctive relief, to wit, a declaration that the acquisition of the Agency Business does not violate ARACS' Exclusive License Agreements with its licensees, and an injunction enjoining Defendants and all those similarly situated, from commencing litigation in other courts concerning Avis's acquisition of the Agency Business. In response, Defendants have moved to dismiss this action for lack of personal and subject matter jurisdiction.

## Discussion

### A.  Jurisdiction Under 28 U.S.C. § 2201

28 U.S.C. § 2201(a) provides, in pertinent part:

> (a) In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief could be sought.

28 U.S.C. § 2201(a).

Based on a review of the facts before the Court, the Court concludes that there exists an actual controversy in those instances where an Agency location is within a defendant licensee's geographical area of operation. *See 800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 132 (S.D.N.Y.1994) ("A party has a right to seek declaratory judgment where a reasonable apprehension exists that if it continues an activity it will be sued by another party.") (citations omitted); (*see* Grand Mem.Reply at 9 ("Grand is considering claims against Avis for breach of the Exclusive License Agreement.").) Accordingly, the Court finds that it has subject matter jurisdiction over the present dispute, and turns its attention to Defendants' motions to dismiss for lack of personal jurisdiction.

### B.  Personal Jurisdiction Over Defendants

Personal jurisdiction in a diversity case is determined by the law of state in which the court sits. *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963). A plaintiff has the ultimate burden of proving personal jurisdiction over a defendant by a preponderance of the evidence; however, "[u]ntil an evidentiary hearing is held, plaintiff need only make a *prima facie* showing by its pleadings and affidavits that jurisdiction exists ... and this remains true notwithstanding a controverting presentation by the moving party." *Hoffritz,* 763 F.2d at 57 (citations omitted). In the absence of an evidentiary hearing, all pleadings and affidavits are construed in a light most favorable to the plaintiff, and doubts are resolved in favor of the plaintiff. *Id.* (citations omitted). Bearing these standards in mind, the Court turns to the pending motions to dismiss for lack of personal jurisdiction.

### 1.  CPLR § 301: "Doing Business"

New York Civil Practice Law and Rules section 301 ("Section 301") provides for

the exercise of "jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y.Civ.Prac.L. & R. § 301 (McKinney 1990). Section 301 provides for, *inter alia,* personal jurisdiction over foreign defendants that are "doing business," and that are, therefore, "present" in New York. *Simonson v. International Bank,* 14 N.Y.2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964). Stated simply, a foreign defendant is doing business in New York if it operates "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917).

■ "Whether a corporation may be deemed to be present by virtue of its doing business in the jurisdiction depends upon the application of a 'simple and pragmatic' test." *Hoffritz,* 763 F.2d at 58 (citations omitted). In applying this pragmatic test, New York courts have focused on several factors, including: the maintenance of bank accounts and other property in New York by the foreign defendant; the presence of employees of the foreign defendant in New York; the existence of an office in New York; and, the solicitation of business in New York. *See id.* (citations omitted).

Viewing the pleadings and affidavits in a light most favorable to Plaintiffs, and resolving all doubts in their favor, the Court concludes that Plaintiffs have not made a *prima facie* showing that the named Defendants are "doing business" in New York. Initially, the undisputed facts convey none of the traditional indicia of "doing business," stated above, on which courts have relied in determining whether a foreign defendant does business in New York. No Defendant is licensed to do business in New York. None maintains an office in New York. No Defendant maintains a bank account in this state, has any employees in this state, or has an authorized agent to accept service in this state. None owns real or personal property in this state. Plaintiffs do not allege that any Defendant "solicits business" in New York.

Further, the allegations regarding activity conducted in New York—*viz.,* by the A & P Committee, the ALA and VSA—do not amount to a *prima facie* showing that the thirteen individual named Defendants, who are entities separate from the A & P Committee, the ALA and VSA, and from one another, do business in New York. On a close reading, Plaintiffs' allegations fail to state business activities by the named Defendants in this jurisdiction *vis-a-vis* the activities of the A & P Committee, the ALA and VSA. The issue is well-framed by Defendants:

> Plaintiffs have seized on the fact that the A & P Committee and the ALA have an office in Garden City, from which a staff of 4 employees administers certain matters. Certainly, the presence of an office and employees would be relevant factors in assessing whether the *A & P Committee* and/or the *ALA* are "doing business" in New York but, neither is a defendant herein. Thus, *the issue is whether the office and employees of these distinct nondefendant entities can be used to show that any or all of Defendants are doing business in New York.*

(Defs.' Mem.Supp. at 32–33) (further emphasis added).

The Court agrees with Defendants' statement of the issue and, for the reasons stated below, finds that Plaintiffs' allegations as to the New York activities of the A & P Committee, the ALA, and additionally, VSA, do not show that the named Defendants do business in New York, notwithstanding that certain executives of some Defendants hold positions in these entities.

For example, as to the activities of VSA, although Plaintiffs place great emphasis on the activities of VSA as a financial enterprise utilized by ARACS licensees, (*see* Collins Nov. 10, 1995 Aff. ¶¶ 8–11), Plaintiffs' allegations amount to little more than a showing of VSA's aggregate business in New York—not business activities conducted in New York by the named Defendants. As with the facts regarding the A & P Committee and the ALA, *cf. Armco Steel Co., L.P. v. CSX Corp.,* 790 F.Supp. 311, 320 (D.D.C.1991) (defendant not transacting business through trade association where no specific evidence that association was acting as defendant's agent), Plaintiffs have not made a showing that the Defendants in this action are "present" in

New York because of the activities of VSA.[2] *See e.g., Delagi v. Volkswagenwerk, AG,* 29 N.Y.2d 426, 328 N.Y.S.2d 653, 656, 278 N.E.2d 895, 898 (1972) (no inference of agency between two separate corporations).

Further, Plaintiffs allege that the ALA and VSA arrange and facilitate substantial purchasing programs for ARACS licensees. Absent from Plaintiffs' proffer, however, is an indication of the extent to which the individual Defendants participate in the ALA and VSA buying programs. That pivotal information may not be gleaned from the record. The Court notes that Defendant Grand, for example, indicates that

> VSA has not processed even one of Grand's dollars within this decade. Grand is not a shareholder in VSA; it is not an officer or director of VSA; and it does not use VSA. to finance the purchase and/or lease of any of its fleet of vehicles.

(Burroughs Nov. 17, 1995 Decl. ¶ 6.) That statement remains uncontroverted by Plaintiffs. Even if, contrary to the fact, Plaintiffs' claims recognized the individual status of each Defendant, and focused their allegations accordingly, it should be noted that the purchase of goods from New York by a Defendant, even if on a large scale, would not, in and of itself, amount to "doing business" within the state. *See Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1046 (S.D.N.Y.1987) ("[P]urchases made in New York by a foreign defendant corporation of a major share of [its] merchandise ... even if systematic and made upon visits occurring at regular intervals, do not warrant a finding that the defendant was present within the jurisdiction of New York.").

Additionally, Plaintiffs, relying on *Frummer v. Hilton Hotels, Int'l Inc.,* 19 N.Y.2d 533, 227 N.E.2d 851, 281 N.Y.S.2d 41, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967), argue that the fact that all customer reservations are made through a New York-based computer system carries jurisdictional significance. (Pls.' Mem.Opp.

at 14 n. 4.) *Frummer,* however, rested on the premise that a New York reservations service acted as the foreign defendant's agent in New York. 19 N.Y.2d at 538, 281 N.Y.S.2d 41, 227 N.E.2d 851. The same cannot be said in this case, in which no showing has been made that Defendants conduct business in New York through an agent, via the central reservations system or otherwise. *See Maresca v. Holiday Inns,* 1993 WL 8166, at *4–5 (S.D.N.Y. Jan. 3, 1995) (motion to strike affirmative defense of lack of personal jurisdiction denied where licensor's in-state promotional, advertising and reservations activities not attributable to licensee via agency principles); *see also Collins v. Grand Rent A Car,* No. 6281/82, slip op. at 3–7 (N.Y.Sup.Ct. July 2, 1985) (Avis's conduct of central reservations service does not amount to showing that Grand Rent A Car, defendant herein, was present in New York for Section 301 jurisdictional purposes).

Finally, Plaintiffs assert that ARACS licensees, *as a group,* earn some revenue from one-way rentals originating in New York. (*See* Collins Nov. 10, 1995 Decl. ¶ 5.) This allegation as to ARACS licensees, *en masse,* however, offers the Court no assistance in determining whether the individual Defendants in this action are "present" for the purposes of establishing jurisdiction pursuant to Section 301.

Accordingly, the Court finds that a *prima facie* showing of personal jurisdiction over the Defendants pursuant to Section 301 has not been made.

### 2. *302(a)(1) Long–Arm Jurisdiction*

■ New York's long-arm jurisdiction statute, New York Civil Practice Law and Rules section 302(a)(1) ("Section 302(a)(1)") provides, in pertinent part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any

---

**2.** Although several Defendants attest to entering into discrete credit transactions with VSA, (*see, e.g.,* Baker Oct. 18, 1995 Aff. ¶ 5; Elzinga Oct. 18, 1995 Aff. ¶ 5; Ness Oct. 18, 1995 ¶ 5), these facts do not alter the Court's conclusion. The activities of VSA in New York, and the isolated transactions attested to by Defendants, do not amount to a *prima facie* showing that any of the thirteen individual named Defendants are "doing business" in New York.

nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state. . . .

N.Y.Civ.Prac.L. & R. § 302(a)(1) (McKinneys 1990). Section 302(a)(1) provides long-arm jurisdiction when two conditions are met: first, the foreign defendant "transacts business" within the state; and, second, the claim "arises out of" that business activity. *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

"[T]he transaction of business in New York is not enough to meet the statutory standard. To bottom § 302(a)(1) jurisdiction, the plaintiff's claim must arise from the business transacted. This requires a showing that the cause of action is 'sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendants to suit in New York.'" *Hoffritz*, 763 F.2d at 59 (citations omitted); *Pavlo v. James*, 437 F.Supp. 125, 127 (S.D.N.Y.1977) (Section 302(a)(1) provides personal jurisdiction over a foreign defendant who transact business in this state "if those acts or transactions give rise to the claim asserted.").

The facts, viewed in a light most favorable to Plaintiffs, clearly show that ARACS is party to contractual relationships with its licensees. *See supra* at 225–26. Under the terms of the licensing agreements, licensees submit monthly reports, fees and payments to ARACS. *Id.* Further, Plaintiffs have shown that business entities exist in New York—*viz.*, the Licensee Association, the Trust, the A & P Committee and VSA, *see id.* at 226, and that those entities generally provide certain services to Avis Licensees. Additionally, Wright, Chairman of Rent–A–Car, and Klyce, President of Car & Truck Rental, each hold positions in those business entities utilized by Avis licensees, and both individuals travel to New York several times a year in connection with the offices that they hold. Assuming these facts to be true, however, the Court does not find that Plaintiffs have made a *prima facie* showing that the undisputed "transactions" that have occurred in New York gave rise to the claim which is the subject of the present declaratory judgment action. To the contrary, the claim rests on Plaintiffs' decision to acquire Agency locations within licensee areas outside of the State of New York, rather than on any business activities of one or more of the defendants within this jurisdiction. Under such circumstances, the necessary Section 302(a)(1) jurisdictional nexus between the business conducted and the claim asserted is absent. The fact that "[w]ithout the License Agreement[s], this action would not have arisen[,]" (*see* Pls.' Mem.Opp. at 10), does not fill the void, for the existence of the contract is one step removed from the basis of the present dispute and the concomitant request for declaratory relief.

In opposition to Defendants' argument that the requirements of Section 302(a)(1) are not met, Plaintiffs rely on decisional authority that is inapposite. First, Plaintiffs rely on *CutCo*, in support of their assertion that Defendants' "transactions of business" in New York clearly rise to the level required by Section 302(a)(1). (*See* Pls.' Mem.Opp. at 5–6.) In *CutCo*, a New York franchisor of hair salons sued a franchisee for breach of restrictive covenants contained in the franchise licensing agreements between the parties. 806 F.2d at 364. The claim arose out of the former franchisee's establishment of competing salons. *See id.* The Second Circuit considered the franchisee's contacts with New York, before and after execution of the agreements, in light of Plaintiff's breach of contract claim. *Id.* at 364–66. Disagreeing with the district court as to the significance of a contractual choice of law provision in the parties' contracts, the applicability of the fiduciary shield doctrine, and the application of agency principles in finding jurisdictional facts, the Second Circuit reversed the district court, finding that the plaintiffs had failed to make a *prima facie* showing of personal jurisdiction under Section 302(a)(1). *Id.* at 368. *CutCo*, however, does not support a *prima facie* showing of personal jurisdiction where, as here, Plaintiffs have not asserted "transactions" by the individual Defendants that give rise to their claim.

Next, Plaintiffs correctly argue that jurisdictional weight should be afforded to paragraph 17 of the License Agreement attached

to the Complaint which provides that "[t]his agreement shall be construed in accordance with the law of the law of New York." *See Sacody Technologies Inc. v. Avant, Inc.,* 862 F.Supp. 1152, 1156 (S.D.N.Y.1994). In balancing the various factors bearing on the issue at hand, this significant, but non-dispositive, provision has been incorporated into the Court's analysis.

Finally, Plaintiffs argue that the Supreme Court's decision in *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), is dispositive of the personal jurisdiction question in the instant case. *(See* Pls.' Mem.Opp. at 8–9.) In *Burger King,* a Michigan franchisee failed to make payments under a franchise agreement in breach of a specific contract provision that required payment in Florida. 471 U.S. at 469, 105 S.Ct. at 2180. Based on its review of the contract and the intricate franchisor-franchisee relationship between the parties, which the Court found provided fair notice to the franchisee that he might be subject to personal jurisdiction in Florida, and given the franchisee's "substantial and continuing relationship with Burger King's [Florida] ... headquarters," the Court held that the exercise of long-arm jurisdiction over the Michigan franchisee would not violate Due Process. *Id.* at 487, 105 S.Ct. at 2190.

In contrast to the cases relied on by Plaintiffs, in which the defendants' in-state activities were found to carry jurisdictional significance, *see CutCo,* 806 F.2d at 366–68, or to have provided fair notice to the defendant of the possibility of suit in a foreign forum, *see Burger King,* 471 U.S. at 487, 105 S.Ct. at 2190, this Court's decision turns on a different issue—namely, whether Defendants' alleged business activities in New York have a sufficient nexus to, and therefore "give rise" to the claim asserted by Plaintiffs that the acquisition of the Agency Business does not violate exclusive licensing agreements between ARACS and its licensees. *See Columbia Pictures Indus., Inc. v. Schneider,* 435 F.Supp. 742 (S.D.N.Y.) (Lasker, J.), *aff'd* 573 F.2d 1288 (2d Cir.1977), and *Beacon Enter., Inc. v. Menzies,* 715 F.2d 757 (2d Cir.1983).

In *Columbia Pictures,* the plaintiff sought a declaratory judgment that its licensing

agreement with a television network to broadcast the film "The Last Picture Show," did not violate a prior agreement with a California entity concerning the distribution rights of the film. 435 F.Supp. at 745. Although not dispositive of the action, Judge Lasker found that a "substantial question" existed over whether the requirements of Section 302(a)(1) had been met. *Id.* at 748. Acknowledging that Plaintiffs had shown significant contacts between the defendants and New York, Judge Lasker continued:

> With one exception ... none of these or other New York contacts set forth ... concerned the film here at issue.... For this reason alone, one might question whether, assuming arguendo these contacts amount to a transaction of business in New York, the cause of action arose out of the defendant's within the state transactions.

*Columbia Pictures,* 435 F.Supp. at 749. Judge Lasker further stated that "[o]ne of the limitations imposed by the state legislature was that where long arm jurisdiction is predicated on the mere "transaction of any business" in the state, plaintiff's cause of action must have arisen out of that transaction of business." *Id.*

The Second Circuit looked to Judge Lasker's reasoning in *Beacon,* 715 F.2d 757 (2d Cir.1983). The plaintiff in *Beacon* sought a declaratory judgment that its products did not infringe defendant's trademark, and asserted that a *prima facie* showing of personal jurisdiction over the defendant pursuant to Section 302(a)(1) had been made based on the defendant's undisputed shipment of goods into New York, and the transmittal of a letter by plaintiff to the defendant threatening litigation. *Beacon,* 715 F.2d at 760. The Second Circuit, however, "encounter[ed] a similar difficulty [as did Judge Lasker] finding a sufficient nexus between the present dispute and [the plaintiff's in-state activity.]" *Id.* at 765. Likewise, this Court, even construing the facts most favorably to Plaintiffs, cannot find a sufficient nexus between Defendants' alleged in-state activity and the present dispute.

Plaintiff asserts that "[l]ong-arm jurisdiction under CPLR 302(a)(1) is commonly sus-

tained in declaratory judgment actions." (*See* Pls.'s Mem.Opp. at 11.) (footnote and citations omitted). In support of that assertion, Plaintiffs rely on *Moyers v. Stuart Brown & Mythology, Ltd.,* 1990 WL 3183, 1990 U.S.Dist. LEXIS 224 (S.D.N.Y.1990) (Haight, J.). In *Moyers,* the plaintiffs sought a declaratory judgment that use of videotaped interviews of the late mythologist Joseph Campbell did not violate the alleged exclusive rights to Campbell's thoughts and work on mythology that were held by defendants, California residents. *Moyers,* 1990 WL 3183, at *1, 1990 U.S.Dist. LEXIS 224, at *1. The facts asserted in support of personal jurisdiction pursuant to Section 302(a)(1) included several trips made by the defendants in connection with the disputed use of Campbell's work.

Concluding that "§ 302(a)(1) jurisdiction is not foreclosed in a declaratory judgment action if a sufficient New York nexus is present[,]" *id.,* 1990 WL 3183, at *4, at *6, the *Moyers* court distinguished *Beacon* on its facts. In contrast to *Beacon,* Judge Haight found that "defendants did not merely transmit an isolated single communication by mail or telephone. Instead, defendants purposefully travelled to New York on numerous occasions to convey their demands in person." *Id.,* 1990 WL 3183, at *5, at *7. This Court agrees that Section 302(a)(1) jurisdiction is appropriate in a declaratory judgment action on the proper showing of jurisdictional facts. The Court, however, does not find that Plaintiffs have made such a showing.

In sum, Plaintiffs have failed to make a *prima facie* showing that Defendants' alleged "transactions" of business in New York have given rise to the instant claim. Accordingly, the Court finds that the exercise of personal jurisdiction over Defendants pursuant to Section 302(a)(1) would be inappropriate. In light of the foregoing, the remaining arguments asserted by Defendants in support of their motions to dismiss need not be, and are not, considered.[3]

---

**3.** As the Court has granted this dispositive motion on the ground of lack of personal jurisdiction over any of the named Defendants, the Court does not address Plaintiffs' pending Motions for Defendant Class Certification, for Summary Judgment, and for a Preliminary Injunction.

## *Conclusion*

For the reasons stated above, Defendants' motions to dismiss are granted.

SO ORDERED.