Joe MANTELLO, Plaintiff,

v.

Michael HALL and Caldwell Theatre Company, Defendants.

No. 96 Civ. 2536 (MBM).

United States District Court, S.D. New York.

Nov. 15, 1996.

Ronald H. Shechtman, Tom J. Ferber, Ilene S. Farkas, Pryor, Cashman, Sherman & Flynn, New York City, for plaintiff.

Ronald J. Lewittes, Carlson & Bales, P.A., Miami, Florida, for Defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Joe Mantello sues Michael Hall and Caldwell Theatre Company for false representation in violation of the Lanham Act, 15 U.S.C. § 1125(a), copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*, "reverse passing off" in violation of plaintiff's common law rights, and unjust enrichment. Defendants move to dismiss on various grounds including lack of personal jurisdiction. For the reasons stated below, defendants' motion to dismiss for lack of personal jurisdiction is granted. The other grounds accordingly need not be considered.

### I.

Because a motion to dismiss based on lack of personal jurisdiction is "inherently a matter requiring the resolution of factual issues outside of the pleadings ... all pertinent documentation submitted by the parties may be considered in deciding the motion." *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F.Supp. 175, 178 n. 2 (S.D.N.Y.1995). Therefore, the following facts are drawn from the complaint, affidavits and documentary exhibits submitted by both parties, and on this motion are construed in the light most favorable to plaintiff non-movant. *CutCo Inds., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

Plaintiff is a stage director and a citizen of New York. (Compl. ¶ 3) Caldwell Theatre is a regional theater and not-for-profit corporation located in Boca Raton, Florida. (6/6/96 Hall Aff. ¶¶ 2, 3, 5) Michael Hall is Caldwell's president, chief executive officer and artistic director, and a citizen of Florida. (*Id.* ¶ 1)

In 1994, plaintiff was employed by the Manhattan Theatre Club, located in New York, to direct a play written by Terrence McNally and entitled "Love! Valour! Compassion!" ("the Play"). (Compl. ¶ 6) The Play ran at the Manhattan Theatre Club until February 1995 when it moved to the Walker Kerr Theatre in New York City. (*Id.*) The Play received "favorable reviews" and acclaim and won several awards, including a Tony. Plaintiff personally won the Outer Critics Circle and the OBIE awards for his direction as well as the Joe A. Calloway award. (*Id.* ¶ 8)

Plaintiff is a member of the Society of Stage Directors & Choreographers ("SSDC") which has entered collective bargaining agreements with Leagues of off–Broadway and Broadway producers. (*Id.* ¶ 3; Mantello Aff. ¶ 3; 7/24/96 Shechtman Aff. ¶ 2) In connection with the off–Broadway production of the Play at the Manhattan Theatre, and the Broadway production at the Walker Kerr Theatre, plaintiff entered into contracts which incorporated those collective bargaining agreements. (7/24/96 Shechtman Aff., Ex. B, C) Each collective bargaining agreement included a clause that granted to the director all property rights in and to the direction of the Play. Although the parties

dispute the scope of that grant of rights, that dispute need not be resolved to decide this motion. (*Id.* ¶¶ 4–5)

After plaintiff's successful production of the Play, defendants presented the Play, directed by Hall, at defendant Caldwell's theater in Boca Raton over a seven-week period from February 11, 1996 through March 31, 1996. (6/6/96 Hall Aff. ¶ 7) Defendants negotiated with McNally's agent and obtained a license to produce the Play from Dramatists Play Service, Inc., a New York company which apparently licenses the rights to produce plays. (6/6/96 Hall Aff., ¶ 9, Ex. A)

Plaintiff claims that Hall and Caldwell, in their production of the Play, intentionally recreated his "unique direction and staging" including "the replication of the stage movement, design, lighting and sound." (Compl. ¶ 12) Plaintiff alleges that Hall and his collaborators attended the New York production of the Play and took notes to help copy plaintiff's staging, that defendants obtained literature describing the New York production, that Hall cast actors who had seen the New York production to obtain information about it, and that Hall instructed the designers of his production to attend the New York production to obtain information. (Compl. ¶ 11)

Plaintiff learned about the Caldwell production when a cast member from his production called him from Florida in February or March 1996. (Mantello Aff. ¶ 6) Plaintiff then flew to Florida on March 3, 1996 and saw the Caldwell production. (*Id.*) Plaintiff describes specific scenes in the Caldwell production which he claims duplicated his stage directions and conceptions. *See* (Mantello Aff. ¶¶ 8–11)

Plaintiff filed suit on April 10, 1996. Defendant now moves to dismiss for lack of personal jurisdiction, for improper venue, for transfer under the doctrine of forum non conveniens, for lack of subject matter jurisdiction because plaintiff lacks standing, for failure to state a claim upon which relief can be granted, and finally for a more definite statement pursuant to Fed.R.Civ.P. 12(e).

## II.

Defendants move first to dismiss based on lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). In a diversity case, or a case arising under federal law which does not provide for service of process on a party outside the state, personal jurisdiction is based on the law of the forum state. *See e.g. Omni Capital Int'l. v. Rudolf Wolff & Co.*, 484 U.S. 97, 108, 108 S.Ct. 404, 411–12, 98 L.Ed.2d 415 (1987); *Savin v. Ranier*, 898 F.2d 304, 305 (2d Cir.1990). Although the plaintiff bears the ultimate burden of proof, "until an evidentiary hearing is held, it need only make a prima facie showing by its pleadings and affidavits that jurisdiction exists." *CutCo Inds., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986). In addition, "those documents are construed in the light most favorable to plaintiff and all doubts are resolved in its favor." *Id.* Thus, once a plaintiff has alleged facts, which if proved would support jurisdiction, a defendant cannot win a Rule 12(b)(2) motion merely by denying plaintiff's allegations. Rather, the defendant's moving papers must "entirely refute the plaintiff's allegations." *Bialek v. Racal–Milgo, Inc.*, 545 F.Supp. 25, 33 (S.D.N.Y.1982).

### A. *CPLR § 301—Doing Business*

Plaintiff argues first that defendants are subject to the jurisdiction of this court pursuant to § 301 of the New York Civil Practice Law and Rules ("CPLR"). N.Y.C.P.L.R. 301 (McKinney 1990). CPLR § 301, confers on New York courts general personal jurisdiction over any non-resident or foreign corporation "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its presence in this jurisdiction." *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981); *ABKCO Inds. Inc. v. Lennon*, 52 A.D.2d 435, 384 N.Y.S.2d 781, 784 (1st Dep't 1976); *see also Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990), and cases cited therein; *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir.1990), *cert. denied*, 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991). A party subject to general personal jurisdiction in New York may

be sued in New York on any claim, whether or not the claim arose in New York or from any of the defendant's contacts with New York.

The test to determine whether a corporation or individual is subject to jurisdiction pursuant to § 301 has been called a "simple and pragmatic one ... which is necessarily fact sensitive because each case is dependent on its own particular circumstances." *Landoil,* 918 F.2d at 1043. The issue is whether a defendant's contacts with New York "show a continuous, permanent and substantial activity in New York." *Id.* The traditional indicia which courts rely upon in deciding whether a foreign corporation is doing business in New York include: 1) the existence of an office in New York; 2) the solicitation of business in New York; 3) the existence of bank accounts or other property in New York; and 4) the presence of employees of the foreign defendant in New York. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 58 (2d Cir.1985). Accordingly, a defendant is doing business such that jurisdiction pursuant to § 301 is appropriate if it does business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Landoil,* 918 F.2d at 1043.

Plaintiff asserts that "[i]t is virtually impossible to be legitimately involved in the professional theater business and not do regular, consistent and purposeful business with the New York theater community" and "by the very nature of their business, Defendants systematically conduct business in and with the New York theater community." (Pl. Mem. at 26, 27). Plaintiff relies on defendants' following alleged business dealings in New York to support § 301 jurisdiction: 1) Hall regularly comes to New York to see plays and decide which ones Caldwell wants to produce, and to meet with members of the professional theater community; 2) defendants regularly negotiate and execute licenses to produce plays from licensing services and agents in New York, and regularly make payments to those agencies; 3) Caldwell is a member of the League of Resident Theatres ("LORT"), a New York based organization of regional theaters which negotiates on behalf of regional theaters with various unions, including Actors Equity Association, United Scenic Artists and the Society of Stage Directors and Choreographers (7/9/96 Shechtman Aff. ¶ 6); 4) pursuant to the agreements entered into by LORT, grievances and arbitrations are conducted in New York and Caldwell contributes money to the actors unions' health and pension funds; 5) Caldwell regularly advertises for actors in New York and employs a New York casting agent; and 6) Caldwell regularly solicits contributions and ticket subscriptions from New York foundations, organizations and individuals. (Def.Mem. at 26–27)

Plaintiff does not assert that defendants show the traditional indicia of doing business in New York—an office, solicitation, property or employees in New York. In a sworn affidavit, Hall states that neither he nor Caldwell solicits business or advertises in New York or has an office, mailing address, agent or telephone line in New York. (6/6/96 Hall Aff. ¶ 3) Further, Hall asserts that "all negotiations, discussions and correspondence in connection with Caldwell's association with [LORT] takes place from Caldwell's office in Florida" and Caldwell executes an individual contract with each person employed for a theatrical performance. (*Id.* ¶ 8) Hall claims also that "Caldwell does not and has not regularly solicited support or contributions in New York" and does not "regularly communicate with New York residents." (*Id.* ¶ 4)

Most of the cases in which courts base jurisdiction over foreign corporations on CPLR § 301, feature one or more of the traditional indicia of doing business. However, in *Erving v. The Virginia Squires Basketball Club,* the Court held that the defendant was subject to jurisdiction pursuant to § 301 based on: a) the defendant's connections with the American Basketball Association which was headquartered in New York; b) defendant's regular and continual visits to New York "for the business purpose of playing professional games for profit"; and c) defendant's "dealings with New York business concerns ... in furtherance of the business purpose in New York." 349 F.Supp. 709, 714–15 (E.D.N.Y.1972). To find the de-

fendant subject to general personal jurisdiction pursuant to CPLR § 301, *Erving* relied on *Hawkins v. National Basketball Ass'n.,* 288 F.Supp. 614 (W.D.Pa.1968), in which the Court denied a motion by defendant basketball clubs to change venue, stating that "[t]he only business a corporation-owned professional athletic league team could engage in profitably is to systematically play games with other member teams...." *Id.* (citing *Hawkins,* 288 F.Supp. at 619). Thus, *Erving* reasoned that the playing of games is the business of a professional sports team, and by playing games professional sports teams are doing business. Likewise, in *Laufer v. Ostrow,* 55 N.Y.2d 305, 311, 449 N.Y.S.2d 456, 459, 434 N.E.2d 692, 694–95 (1982) the Court of Appeals held that a soliciting agency was doing business in New York, despite the general rule that mere solicitation of business will not justify general personal jurisdiction, because if the defendant's business "is limited to the soliciting of orders and servicing of purchasers' accounts, [it] *engages directly in its corporate activity* when ... it solicits and services New York accounts on a continuous basis." *Id.* (emphasis added). Thus, a defendant who lacks the traditional indicia of doing business nevertheless does business in New York when it engages in its principal corporate activity within New York on a systematic and continual basis.

Here, Caldwell's business is the presentation of plays. Plaintiff has not alleged that defendant presented the Play or any other play in New York. Indeed, plaintiff has alleged, and defendants have not denied, only three systematic and ongoing contacts defendants have with New York: that Caldwell regularly enters into licensing agreements with New York entities or individuals for the rights to produce plays, that defendants regularly hire New York actors for their productions and deal with their New York–based unions, and that Caldwell is a member of LORT and participates in its activities. Plaintiff also alleges that Hall regularly travels to New York to see plays.

Those activities do not constitute "doing business." Hall's visits to New York to review current theater, even if for the purpose of determining which plays Caldwell should

produce, is not "doing business." Hiring New York actors for productions in Florida and obtaining licenses is not "doing business." Through these activities, defendants, in essence, merely secure the goods and services they need—plays, actors and licenses—to do their business in Florida, *i.e.,* produce plays. *See Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.,* 916 F.Supp. 224, 228 (E.D.N.Y.) ("[T]he purchase of goods from New York by a Defendant, even if on a large scale, would not, in and of itself, amount to 'doing business' within the state."), *rev'd on other grounds,* 98 F.3d 25 (2d Cir. 1996).

Also, defendants' association with LORT is not "doing business" such that defendants are subject to the general personal jurisdiction of New York courts. "The mere existence of a business relationship with entities within the forum state is insufficient to establish presence." *Insurance Co. of Penn. v. Centaur Ins. Co.,* 590 F.Supp. 1187, 1189 (S.D.N.Y.1984). Indeed, in *Agency Rent A Car System,* the Court refused to find the defendants subject to jurisdiction under § 301 absent the traditional indicia of doing business, despite the defendants' connections with business organizations that serviced their needs in New York. 916 F.Supp. at 228. General jurisdiction over a foreign corporation may be based on its relationship to an entity which is "definitively 'present' in New York" only in two circumstances: "when the local corporation has no actual, independent existence from the foreign corporation, ... and when the local corporation acts as the foreign corporation's agent to the extent that it 'does all the business which [the foreign entity] could do were it here by its own officials.'" *Mayatextil v. Liztex U.S.A., Inc.,* No. 92 Civ. 4528, 1995 WL 131774 (S.D.N.Y. March 23, 1995) (brackets in original, citations omitted).

Here, plaintiff does not claim that either Hall or Caldwell participates in any way in the business or affairs of LORT, other than by being a member theater and, presumably, incorporating into Caldwell's employment contracts the agreements LORT enters into with the actors unions. *Cf. Erving,* 349 F.Supp. at 714 (noting that the defendant

"participated in the management and revenues" of the ABA which it termed a "joint business enterprise"). Plaintiff states merely that "upon information and belief" defendants participate in the business of LORT. (7/9/96 Shechtman Aff. ¶ 6) That allegation alone is insufficient. *See Agency Rent A Car*, 916 F.Supp. at 228 (holding plaintiff failed to make a prima facie showing of jurisdiction, "notwithstanding that certain executives of some Defendants hold positions" in the New York entities with which defendants were associated). Also, plaintiff does not claim that LORT serves as defendants' agent for all purposes in New York. Rather LORT serves Caldwell and other regional theaters as an agent for one discrete aspect of their business—entering into collective bargaining agreements with theatrical unions. Accordingly, plaintiff has not presented a prima facie case that defendants, through their association or membership in this consortium, actually did business in New York such that they should be considered generally present in New York. Here, it is important to remember that if CPLR § 301 applied, defendants would be subject to the general personal jurisdiction of New York courts and could then be sued on *any* claim, not just one arising out of the production of allegedly infringing plays.

Finally, plaintiff admits that his argument for finding defendants subject to the general personal jurisdiction of New York courts would apply as well to nearly all of the regional theaters in the nation that obtain licenses to produce plays from New York entities, hire New York actors, review Broadway and off-Broadway productions and are members of LORT: "[t]he reality is that most of the LORT theaters around the country regularly do business in New York." (7/9/96 Shechtman Aff. ¶ 8) Although plaintiff embraces that extreme result, these defendants are unlike basketball teams, who actually engage in their business when they travel into New York and play a game. Defendants and others similarly situated, who lack the traditional indicia of doing business, do not subject themselves for all purposes to the jurisdiction of New York courts merely because they travel to New York to "exploit the synergy between New York City's unique theatrical resources and the work of regional theaters." (*Id.*)

## B. *CPLR 302(a)—New York's Long–Arm Statute*

Plaintiff also argues that defendants are subject to the personal jurisdiction of this court pursuant to New York's long-arm statute, CPLR § 302(a). In particular, plaintiff argues that defendants satisfy either § 302(a)(1) or § 302(a)(2).

▆ CPLR § 302(a)(1) permits a court to exercise jurisdiction over a nondomiciliary who, in person or through an agent "transacts any business within the state...." N.Y.C.P.L.R. 302(a)(1). To justify the exertion of personal jurisdiction over a defendant based on § 302(a)(1) two conditions must be met: "first, the nondomiciliary must 'transact business' within the state; second, the claim against the nondomiciliary must arise out of that business activity." *CutCo Inds.*, 806 F.2d at 365. To "transact business," a nondomiciliary must "purposefully avail[ ] itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 37–38, 229 N.E.2d 604 (1967) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)). The factors a court considers to determine whether an out-of-state defendant transacts business in New York include: 1) the existence of an ongoing contractual relationship; 2) whether the contract was negotiated or executed in New York; 3) if there are any choice-of-law provisions in the contract; and 4) whether the contract requires franchisees to send notices or payments into New York. *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29–30 (2d Cir.1996). Because a court must examine "the totality of circumstances," other factors may also be considered. *Id.; CutCo Inds.*, 806 F.2d at 365.

▆ Plaintiff has alleged that the following contacts with New York constitute transaction of business and demonstrate that defendants availed themselves of New York's laws: 1) Hall's trips to New York to

see the Play and determine whether Caldwell should produce it; 2) defendants' negotiations with Dramatists Play Service to obtain the license to produce the play and defendants' sending royalty payments in connection with that license into New York; 3) defendants' auditions in New York to cast actors; 4) defendants' filing the actors' contracts in New York with Actors Equity Association; 5) defendants' meeting in New York with backstage personnel from the New York production to obtain technical information; and finally, 6) defendants' payments to the actors union's benefit funds in New York. (Pl.Mem. at 18–20) In reply, Hall claims that all negotiations to obtain the rights to the Play were conducted from Florida and not in New York, and that no one from Caldwell met with backstage personnel or inspected the set of the New York production of the play. (6/6/96 Hall Aff. ¶ 8; 6/17/96 Hall Aff. ¶ 7)

Of the above contacts, only defendants' license with Dramatist Play Service and its employment contracts and connections with New York actors and their unions arguably constitute transaction of business in New York. Transaction of business does not include viewing a Broadway production which is open to the public, or meeting with technical people to obtain information about the Play. Those actions may very well have been blameworthy in the sense that defendants were attending the Play not merely to enjoy it but to copy its presentation so they could produce their allegedly infringing play. However, simply because conduct may be blameworthy does not make it transaction of business.

 Even if defendants transacted business with the actors, their unions and Dramatist Play Service, they are not subject to personal jurisdiction in New York courts pursuant to § 302(a)(1) unless plaintiff's claims for relief arise out of that business. *See, e.g.,*

*Agency Rent A Car,* 98 F.3d at 30–31. "A claim 'arises out of' defendant's transaction of business in New York 'when there exists a substantial nexus between the business transacted and the cause of action sued upon.'" *Id.* (citations omitted).

 Here, plaintiff has claimed that defendants misrepresented the source of the staging and direction of the Play in violation of the Lanham Act and plaintiff's common law rights, that defendant infringed plaintiff's copyright[1], and that defendant was unjustly enriched. Plaintiff's claims all sound in tort and do not arise out of defendants' transaction of business in New York. For a tort claim to arise out of transaction of business in New York, the connection between the transaction and the claim must be direct. Here, plaintiff claims that defendants intentionally copied his unique staging of the Play. The business which defendants transacted in New York included holding auditions in New York and hiring New York actors whose contracts were filed with unions in New York, sending benefits payments to the actors unions in New York, entering into a licensing agreement with Dramatists Play Service, and sending royalty payments to the Play Service. None of these activities resulted directly in an injury to plaintiff. The torts alleged here, all stemming from the wrongful misappropriation of plaintiff's stage directions, do not arise out of defendants' hiring of New York actors and dealing with New York unions, or defendants' agreement with Dramatist Play Service. Each of these alleged transactions was with a third party and not with plaintiff. Plaintiff has not made a prima facie showing that his claims arise out of defendants' transaction of business in New York. Therefore, CPLR § 302(a)(1) does not confer jurisdiction here.

Plaintiff argues next that New York courts may exercise personal jurisdiction over defendants pursuant to CPLR § 302(a)(2)

---

1. There is some question whether plaintiff has filed for copyright protection such that he can institute a claim for infringement. 17 U.S.C. § 411 (1994). Plaintiff claims that on March 22, 1996, he sent an application for registration to the Registrar of Copyrights. (Compl. ¶ 21) In his affidavit dated July 17, 1996, Hall claims to have hired a copyright registration service to search for any filings by plaintiff with the Copyright Office and that as of July 17, 1996 it had found no filings by the plaintiff. (6/17/96 Hall Aff. ¶ 10, Ex. A) Because I find no personal jurisdiction over defendants, I need not consider whether plaintiff has satisfied § 411 such that he can maintain a claim for copyright infringement.

which grants jurisdiction over a nondomiciliary who "commits a tortious act within the state...." N.Y.C.P.L.R. 301(a)(2).[2]

▮▮▮▮ To satisfy § 302(a)(2), in cases involving copyright infringement and violations of the Lanham Act, the offering, display or sale of the allegedly infringing product must occur in New York. That is to say, the conduct that occurs in New York must be the infringer's misrepresentation of the source of the product or his unauthorized presentation of the product. *See, e.g., Imagineering, Inc. v. Van Klassens, Inc.,* 797 F.Supp. 329 (S.D.N.Y.1992) (unfair competition in violation of the Lanham Act); *Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.,* 779 F.Supp. 335 (S.D.N.Y.1991) (trademark/trade dress infringement); *Business Trends Analysts v. Freedonia Group, Inc.,* 650 F.Supp. 1452 (S.D.N.Y.1987) (copyright infringement). In addition, plaintiff's state law claim of "reverse passing off" is a tort encompassed within a claim of "unfair competition." *See Grupke v. Linda Lori Sportswear, Inc.,* 921 F.Supp. 987, 996 (E.D.N.Y. 1996). "Under New York law the 'essence' of an unfair competition claim is 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" *Id.* (citing *Milstein v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 34 (2d Cir.1995)) (emphasis added); *see also American Movie Classics Co. v. Turner Entertainment Co.,* 922 F.Supp. 926, 932 (S.D.N.Y. 1996) ("[T]he essence of [passing off] is false representation of origin."). Accordingly, to commit the tort of reverse passing off within New York, a defendant must pass off goods in New York—offer some products, goods or services within New York which he misrepresents as his own. *See Business Trends,* 650 F.Supp. at 1456 (finding jurisdiction over an unfair competition claim based on evidence that the defendant attempted to sell his product in New York); *Imagineering,* 797

F.Supp. at 331 ("For each of plaintiff's claims [including common law unfair competition] the cause of action is deemed to arise where the allegedly infringing sales were made."). An actual sale of an infringing product "is not necessary to establish personal jurisdiction" *Business Trends,* 650 F.Supp. at 1456; merely offering one copy of an infringing product through distribution of a catalog within the state is sufficient. *Honda Assocs., Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 889 (S.D.N.Y.1974).

Here, plaintiff claims that defendants passed off their infringing play in New York by soliciting ticket sales, subscriptions and contributions from New York residents. Plaintiff claims first that defendants obtained contributions from Chemical Bank and the IBM corporation, two New York-based organizations, and to solicit these contributions, *"undoubtedly* ... sent promotional material and other information to New York in which Defendants passed off Plaintiff's work as their own." (Pl.Mem. at 22) (emphasis added) Plaintiff bases that claim on the program for the Caldwell production of the Play, which lists Chemical Bank and IBM as major contributors. (7/9/96 Shechtman Aff. ¶ 7). Defendants state that they obtained contributions in the form of used computer equipment and donations from IBM and Chemical Bank, but that those contributions were solicited from IBM's and Chemical Bank's local offices in Boca Raton, Florida. (7/17/96 Hall Aff. ¶ 4) Defendants' explanation thoroughly refutes plaintiff's allegation; other than that bare allegation, plaintiff has offered no evidence that defendants solicited foundations or companies in New York or that defendants sent promotional material into New York. Plaintiff merely surmises both that defendants solicited Chemical Bank and IBM in New York, and that in doing so defendants sent to New York promotional material in which they passed off the Play.

---

**2.** Plaintiff has not claimed that defendants are subject to jurisdiction pursuant to § 302(a)(3) which permits jurisdiction over a defendant who commits a tort outside the state if he

 (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from

goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce....

N.Y.C.P.L.R. 302(a)(3) (McKinney 1990).

Plaintiff argues next that "based on the dual residence of many members of Defendants' audience [Florida and New York], Defendants have *likely* solicited ticket sales or subscriptions for the infringing play in New York." (Pl.Mem. at 22) (emphasis added) Plaintiff's argument, that defendants "must have" solicited ticket sales or subscriptions to the Play, is not factually based or intuitively apparent. Rather, plaintiff is merely making an inference from the fact that many residents of Florida also are residents of New York that defendants must have solicited business in New York. In two sworn affidavits, Hall states that "the Caldwell production of the Play was promoted, marketed and advertised exclusively in the State of Florida" (6/6/96 Hall Aff. ¶ 22), and "Caldwell does not and has not regularly solicited support or contributions in New York from New York residents." (7/17/96 Hall Aff. ¶ 4)

Although on a motion to dismiss I must resolve all doubts and construe all documents in favor of plaintiff non-movant, *CutCo Inds.,* 806 F.2d at 365, plaintiff has failed to present a prima facie case that the alleged torts took place in New York. Plaintiff merely surmises that defendants solicited or sold tickets in New York. Even if I took judicial notice of the fact that many residents of Florida are also residents of New York, the conclusion that defendant solicited ticket sales in New York does not follow. Indeed, absent specific evidence—and there is none here—it is implausible that a Florida business whose product—plays—can be consumed only at its theater in Florida and is unlikely itself to provide the reason or focus for a trip to Florida, would solicit business in New York. In plain terms, these defendants run a regional theater, not Disneyworld.

Finally, Plaintiff's allegation that defendants came to New York to spy on his production of the Play, *i.e.*, to view the Play and take notes on the direction and staging may, as noted, constitute blameworthy behavior. However, those acts do not constitute the torts which plaintiff alleges defendants committed. Each tort plaintiff alleges—copyright infringement, unfair competition under the Lanham Act, and com-

mon law reverse passing off—requires the sale or the offering for sale of the allegedly infringing product or service in New York. It is important to remember that "CPLR 302 does not extend jurisdiction as far as may be constitutionally permitted." *Interface Biomedical Labs. Corp. v. Axiom Medical, Inc.,* 600 F.Supp. 731, 734 n. 3 (E.D.N.Y.1985). The issue here is whether the statute permits the exercise of personal jurisdiction, not whether the Constitution does. Plaintiff has failed to make a prima facie showing that defendants committed a tort in New York by offering or promoting the Play in New York and CPLR § 302(a)(2), therefore, does not confer jurisdiction.

\* \* \*

For the reasons stated above, defendants' motion to dismiss based on lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2) is granted. Defendants' other motions need not be decided.