Anna GRUPKE and Jerry Roberts,
d/b/a Hep Cat, Plaintiffs,

v.

LINDA LORI SPORTSWEAR, INC.,
Agents Card and Gift Co., Inc., Craig
Weiss, and Janet Bruschetti, Defendants.

No. 94 CV 0782.

United States District Court,
E.D. New York.

April 8, 1996.

Nilles & Nilles, S.C., Milwaukee, WI (Andrew J. Nilles and John P. Frederickson, of counsel), for plaintiff.

Coleman & Seife, White Plains, NY (Alan Seife, of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiffs Anna Grupke and Jerry Roberts, Tennessee residents doing business as, and joint owners of, Hep Cat, a mail order business that designs and sells apparel decorated with designs of cats, claim in this action against defendants Linda Lori Sportswear, Inc. ("Linda Lori"), Agents Card & Gift Co., Inc. ("Agents"), Craig Weiss, and Janet Bruschetti, violations of the Copyright Act, 17 U.S.C. § 101, *et seq,* and § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the common law of unfair competition.

The complaint alleges in Count I that defendants willfully infringed plaintiffs' registered copyright, in Count II that defendants willfully violated the Lanham Act by using a reproduction of plaintiffs' copyrighted drawing and infringing their unregistered trademark and their trade dress, and in Count III

that defendants engaged in common law unfair competition. The complaint seeks damages and injunctive relief. The court has jurisdiction under the federal statutes and by reason of diversity. *See* 28 U.S.C. §§ 1331, 1332, and 1338(b).

All four defendants move to amend their answer to assert counterclaims of common law unfair competition and tortious interference with business relations. Defendants Linda Lori, Agents, and Weiss move for summary judgment on Counts II and III of the complaint. Defendant Bruschetti moves for summary judgment on all three counts.

## I

Plaintiffs originally brought the action on February 18, 1993 against Linda Lori and the Miles Kimball Company ("Miles Kimball") in the United States District Court for the Eastern District of Wisconsin. On January 6, 1994 Judge Rudolph T. Randa denied a motion by Linda Lori to dismiss. Because Linda Lori had not answered by January 28, 1994, plaintiffs then moved for entry of a default judgment. By Decision and Order dated February 14, 1994 Judge Randa severed the claims against Linda Lori and transferred them to this district under 28 U.S.C. § 1404(a), and stayed the claims against Miles Kimball.

Plaintiffs pursued in this court the motion for entry of a default judgment. The court denied the motion on June 10, 1994. On September 15, 1994, plaintiffs filed, without opposition, an amended complaint adding Agents, Weiss, and Bruschetti as defendants.

On October 6, 1994, Magistrate Judge Mann, to whom the case had been assigned for discovery, set a discovery schedule with a final deadline of May 31, 1995. She later extended this deadline to July 31, 1995.

Defendants filed their motions to amend and for summary judgment on August 28, 1995 and October 6, 1995, respectively. On October 6, 1995, defendants also moved for sanctions against plaintiffs and their counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure. By letter dated October 16, 1995, defendants withdrew their motion for sanctions.

## II

The following facts appear substantially undisputed. Linda Lori is a Pennsylvania corporation manufacturing and selling apparel printed with various designs. Agents is a New York corporation engaged in the retail sale of gifts and greeting cards. Weiss is the president of Linda Lori and of Agents. Bruschetti has been a salaried employee of Linda Lori and/or Agents since 1983, but has never participated in a pension, profit sharing, or retirement plan of either corporation.

Plaintiffs Grupke and Roberts, wife and husband, jointly own and operate Hep Cat, a mail order business located in Nashville, Tennessee. Hep Cat designs and sells clothing, including tee-shirts decorated with designs and drawings of cats. In 1986 Grupke created a pen and ink drawing for such a tee-shirt design. The front of the shirt depicts six cats appearing to walk towards the viewer, and the back shows a rear view of the same six cats walking away from the viewer. Since 1986 plaintiffs have marketed this shirt under the name "Cats Coming and Going." Grupke received from the United States Register of Copyrights a Certificate of Copyright Registration dated February 9, 1987 for the pen and ink drawing.

In March 1992 defendant Weiss received from H & S Sportswear, Inc. ("H & S") a sample tee-shirt depicting the fronts and backs of cats. Weiss says that H & S told him that a company called Any Prints, Inc. ("Any Prints") held the copyright in the tee-shirt design. Weiss ordered some tee-shirts bearing this design for eventual sale by Agents. On or about April 15, 1992, Weiss asked Any Prints to print an additional quantity of the same shirts. Between March and May of 1992 Linda Lori sold some of these tee-shirts and sent samples to some of its customers, including Miles Kimball and Carol Wright Sales ("Carol Wright").

In May 1992 Weiss learned that the design on the Any Prints shirts was very similar to plaintiff's copyrighted design on shirts marketed as "Cats Coming and Going." On advice of counsel, Linda Lori hired an artist to create a different design showing the front

and back of cats. This new design, called "Heads and Tails," consisted of frontal and rear views of five cats. After obtaining a registered copyright Linda Lori began selling tee-shirts bearing the new design, its copyright, and the trademark "Heads and Tails."

Miles Kimball's fall 1992 catalogue, produced before Kimball was aware of the copyright problem, contained pictures of tee-shirts bearing the "Any Prints" design. After learning of this, Miles Kimball continued using its fall 1992 catalogue but sold only the "Heads and Tails" tee-shirts. Miles Kimball sold 1,960 cat shirts, at least 1,648 of which bore the "Heads and Tails" design.

Miles Kimball sent customers who received a "Heads and Tails" shirt a letter explaining that the shirt was different than the one featured in the catalogue and offering a refund if the customer was not satisfied with the shirt.

Carol Wright mistakenly published a picture of the "Any Prints" shirt in its catalogue. When Linda Lori learned of this mistake, Weiss telephoned Carol Wright to inform it that a picture of the "Head and Tails" shirt should appear. By letter dated May 19, 1993, Bruschetti confirmed that Linda Lori's design was "Heads and Tails."

Linda Lori has continued to market its Heads and Tails shirt.

### III

Defendants' proposed counterclaims allege, in substance, the following. In September 1992 plaintiffs began to contact Linda Lori's customers. They made false and malicious statements to these customers saying that Hep Cat had a copyright on all front and back cat shirts, that Linda Lori had stolen Hep Cat's idea, that Linda Lori's shirts were inferior, and that Hep Cat and Linda Lori were already litigating the matter. Hep Cat offered to supply Linda Lori's customers with its Cats Coming and Going shirts and threatened to sue them if they continued to sell the Heads and Tails shirts.

Plaintiffs' false and malicious statements to Linda Lori's customers were allegedly intended wrongfully to appropriate the benefits of Linda Lori's established business relations. As a result, some of those customers, including Miles Kimball and Hanover House, ceased or substantially reduced their business with Linda Lori.

### A

On these facts defendants allege separate counterclaims for unfair competition and tortious interference with business relations. But all of the conduct of which defendants complain falls within the rubric of tortious interference. Accordingly, the court will treat their motion as an attempt to assert a single counterclaim.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely granted when justice requires." A party may amend its pleading to assert a "colorable" new claim, *see S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979), unless the nonmovant shows prejudice or bad faith. *See Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993). A court may also deny a motion to amend on account of "undue delay." *See State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981).

The assertion of a new claim causes "prejudice" if it would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* But "mere delay," without bad faith or undue prejudice, is not enough. *Id.*

Plaintiffs make several objections to the motion to amend. They say that the new claims are meritless, their assertion at this time would create substantial prejudice, defendants have long been aware of the facts underlying the claims, and venue for the counterclaims does not lie in this district.

### B

A proposed counterclaim is "colorable" if it would survive a motion to dismiss. *See S.S. Silberblatt, supra,* 608 F.2d at 42;

*CBS, Inc. v. Ahern,* 108 F.R.D. 14, 18 (S.D.N.Y.1985). A denial of leave to amend is justified "only if it appears to a certainty that plaintiff cannot state a claim." *See Square D Co. v. Niagara Frontier Tariff Bur., Inc.,* 760 F.2d 1347, 1366 (2d Cir.1985) (citation and internal quotation marks omitted), *aff'd,* 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986).

To determine whether the proposed counterclaims state claims of tortious interference with business relations, the court should first determine what law is applicable.

 In a diversity action, the court applies the choice-of-law principles of the state in which it is sitting. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). After a transfer under 28 U.S.C. § 1404(a), the transferee court applies the law of the transferor court. *See Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

 The parties have not argued what state law the courts of Wisconsin would apply. But the United States District Court for the Eastern District of Wisconsin has adopted the sensible approach in multi-state unfair competition actions, where the parties have made no showing of significant differences in the laws of the various states, of applying the law articulated by the best reasoned cases. *See G. Heileman Brewing Co. v. Anheuser–Busch, Inc.,* 676 F.Supp. 1436, 1482–83 (E.D.Wis.1987), *aff'd,* 873 F.2d 985 (7th Cir.1989). Accordingly, the court will apply New York case law to the issues of tortious interference with business relations and of unfair competition.

 To state a claim for tortious interference with business relations under New York law, claimants must allege interference with their business relations with a third party with the sole purpose of harming the claimants or with the use of dishonest, unfair, or improper means, and injury to the business relationship. *See Purgess v. Sharrock,* 33 F.3d 134, 141 (2d Cir.1994).

 Defendants' proposed counterclaim for tortious interference with business relations states a claim. Plaintiffs are alleged to have informed, indeed they now admit that they informed, some of Linda Lori's customers of the alleged infringement. Defendants say that these communications were made with malicious and improper intent and thereby damaged defendants' relationships with their customers. Defendants have stated a "colorable" claim.

### C

 Plaintiffs have not shown that allowing defendants to amend will require significant additional expense, substantially delay the case, or prevent plaintiffs from bringing a timely action elsewhere. Plaintiffs have not demonstrated sufficient prejudice to warrant denial of defendants' motion.

Plaintiffs argue that because defendants first asserted the counterclaim two years after the action began it is too late. But courts have ordinarily given leave to assert counterclaims after years of litigation. *See Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (listing cases). Moreover, defendants have explained the delay by pointing out that only recently have they uncovered evidence pertinent to the claim and have changed attorneys.

Plaintiffs suggest that a letter from Weiss evincing an intent to pursue the counterclaim and proclaiming that "revenge is sweet," bespeaks a plain motive to harass. Despite the letter's angry, somewhat vindictive tone, this court deems the letter to show not bad faith but a firm conviction that the claim has merit.

### D

Under 28 U.S.C. § 1391(a)(2), venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Plaintiffs say that the events giving rise to the counterclaims occurred not in New York but either in Tennessee, where Hep Cat made the telephone calls to Linda Lori's customers, or in Wisconsin and New Jersey, where Miles Kimball and Hanover House received the calls. Plaintiffs also say that the proposed counterclaims do not assert any basis for subject matter or personal jurisdiction.

The proposed amended answer states, and plaintiffs do not contest, that plaintiffs and defendants are citizens of different states and alleges damages in excess of $50,000. Accordingly, the court has subject matter jurisdiction over the counterclaim under 28 U.S.C. § 1332. The proposed amended answer also contains implicit bases for venue and personal jurisdiction.

Defendants may file an amended answer that includes the proposed counterclaim within thirty days of the filing of this memorandum and order, including an explicit statement of the grounds on which venue depends. The counterclaim shall be made only in the name of Linda Lori and/or Agents. They appear to be the only parties whose business relations could have been damaged. Plaintiffs may, if they choose, move to dismiss or transfer the claim.

## IV

All defendants have moved for summary judgment dismissing Counts II and III of the complaint claiming violation of the Lanham Act and of the common law of unfair competition. The court will grant summary judgment only if the evidence establishes "that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c).

The burden of making this showing rests on the moving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The court views the record in the light most favorable to the party opposing the motion, *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), and resolves all ambiguities and draws all reasonable inferences in favor of that party, *see Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). The court may enter summary judgment against a nonmovant who, after adequate time for discovery, fails to establish the existence of an essential element on which it bears the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a private claim for injunctive relief and damages against any person who in connection with goods "uses in commerce any word, term, name, symbol or device" or "any false designation of origin, false or misleading description" or "representation of fact" which is "likely to cause confusion" or "to deceive" as to "the origin" of the goods. This provision protects an unregistered trademark and trade dress against infringement. *See Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 168 (2d Cir. 1991).

Plaintiffs say that defendants violated § 1125(a) by (1) use of "direct reproduction" of Hep Cats' design to solicit orders for their own tee-shirt; (2) infringement of plaintiffs' unregistered trademark "Cats Coming and Going;" and (3) infringement of the trade dress of plaintiffs' Cats Coming and Going shirts by selling a tee-shirt with "confusingly similar" trade dress.

Defendants say that they did not intend to create confusion as to the origin of their shirts, did not use a direct reproduction of Hep Cat's shirts to advertise their own product, never used the phrase "Cats Coming and Going," and did not use in their Heads and Tails shirt a trade dress confusingly similar.

### Passing Off

■ The use of another party's product or photographs of it to sell or solicit sales of one's own different or inferior product violates § 1125(a). *See Sublime Prods., Inc. v. Gerber Prods., Inc.,* 579 F.Supp. 248, 250 (S.D.N.Y.1984); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27.08[1][b] (3d ed. 1995).

Defendants admit that they advertised with sample tee-shirts bearing a design resembling Hep Cat's and then filled the resulting orders with the Heads and Tails tee-shirts. Defendants say this conduct does not violate § 1125(a) because (1) they did not intend to misrepresent their product and made significant efforts to clear up any possible confusion and (2) their initial samples differed, "albeit only slightly," from plaintiffs' design.

■ Intent to deceive is not an element of a Lanham Act action for false representa-

tion. *See Johnson & Johnson v. Carter–Wallace, Inc.,* 631 F.2d 186, 189 (2d Cir. 1980); *Brandt Consol., Inc. v. Agrimar Corp.,* 801 F.Supp. 164 (C.D.Ill.1992). Even uncontested proof that defendants did not intend to misrepresent their product and sought to correct misunderstandings would not entitle them to summary judgment on this claim.

■ Plaintiffs say that defendants' samples were practically identical to their own design and that the photographs of Linda Lori's samples in the Miles Kimball and Carol Wright catalogs are, apart from some deterioration in the resolution of the screen printing, indistinguishable from plaintiffs' design. After reviewing the parties' submissions and examining photocopies of photographs of plaintiffs' design and defendants' samples, the court concludes that there remains an issue of fact as to whether they are effectively identical.

To the extent that the plaintiffs claim passing off the court will deny summary judgment.

### Infringement of Unregistered Trademark

■ Plaintiffs allege that defendants violated section 1125(a) by infringing their unregistered trademark "Cats Coming and Going." Defendants say that they never used this phrase in marketing their tee-shirts. Although two of defendants' customers have testified in support of this contention, some of defendants' invoices use the term "Cats Coming & Going." Because there remains a dispute as to whether defendants used this slogan to market their product, the court may not on this ground grant summary judgment on this claim.

■ Defendants suggest that the slogan "Cats Coming and Going" is not entitled to trademark protection. Marks and terms fall into four categories: generic, descriptive, suggestive, and arbitrary or fanciful. *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976). A descriptive mark or term receives protection only if its holder can prove that it has acquired "secondary meaning." *See Bernard v. Com-*

*merce Drug Co.,* 964 F.2d 1338, 1340 (2d Cir.1992).

■ A mark is descriptive if it provides "an immediate idea of some characteristic or attribute of the product." *Id.* at 1341 (citation omitted). "A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods." *Abercrombie & Fitch, supra,* 537 F.2d at 11. In categorizing a term, the court does not consider it in the abstract, but focuses on its meaning in the context in which it appears.

■ Used in conjunction with a tee-shirt depicting the front and back of a group of cats, the term "Cats Coming and Going" is descriptive. No leap of imagination is necessary to understand that the term refers to the tee-shirt. The term is thus entitled to trademark protection only if plaintiffs can prove that it has acquired secondary meaning.

■ A descriptive term acquires secondary meaning when "the consuming public associates the term with a particular source." *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1040 (2d Cir.1992). There is such association when a term comes to identify a particular producer of a product rather than the product itself. Plaintiffs must show that a substantial segment of the relevant consumer group associates the phrase "Cats Coming and Going" with Hep Cat. *See Coach Leatherware Co., supra,* 933 F.2d at 168; *PaperCutter, Inc. v. Fay's Drug Co.,* 900 F.2d 558, 564 (2d Cir.1990) (party claiming exclusive rights has burden of proving secondary meaning).

■ In determining whether a term has acquired secondary meaning, the court may consider, among other things, advertising expenditures, consumer studies and surveys, sales success, unsolicited media coverage, and length and exclusivity of use. *See Bristol–Myers Squibb Co., supra,* 973 F.2d at 1041. The central question is whether "the primary significance of the term in the minds of the consuming public is not the product but the producer." *Centaur Communications, Ltd. v. A/S/M Communications, Inc.,*

830 F.2d 1217, 1221 (2d Cir.1987) (citation and internal quotation marks omitted).

■ Plaintiffs try to show that "Cats Coming and Going" has acquired secondary meaning by presenting evidence that between 1989 and 1993 Hep Cat spent over $ 1 million to advertise their products and that between 1990 and 1993 they sold over 105,-000 Cats Coming and Going shirts. They also offer four letters from customers who appear to associate the phrase "Cats Coming and Going" with Hep Cat. Finally, plaintiffs say that they began using the phrase in 1986 and that to their knowledge no one else has used it.

Proving secondary meaning "entails rigorous evidentiary requirements." *Coach Leatherware Co., supra,* 933 F.2d at 169. Plaintiffs have not met these requirements. They began this action in 1993 and have had ample discovery. But they have not presented any marketing surveys or even defined the relevant consumer group. Nor have they demonstrated that anyone deliberately copied their slogan.

Plaintiffs support their assertion that many customers associate the phrase Cats Coming and Going with Hep Cat with only four customer letters. They have not shown what portion of their general advertising budget was devoted to the Cats Coming and Going slogan and shirts. In short, plaintiffs have not presented evidence that would allow a jury to find that the phrase Cats Coming and Going has acquired secondary meaning.

The court will grant summary judgment to defendants as to infringement of plaintiffs' unregistered trademark.

### Trade Dress Infringement

■ A product's trade dress is its "overall composition and design, including size, shape, color, texture, and graphics." *Coach Leatherware, supra,* 933 F.2d at 168. Plaintiffs say that the forms, colors, and arrangement of the cats in their design are protected trade dress. In essence, they seek protection for the design itself.

■ To prove that defendants infringed plaintiffs' trade dress in violation of § 1125(a), they must show that (1) their de-

sign is distinctive and (2) consumers are likely to confuse it with the Heads and Tails design. *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 31 (2d Cir. 1995).

■ In *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1009 (2d Cir.1995), the Court of Appeals for the Second Circuit held that trade dress inherent in clothing designs receives protection under the Lanham Act only if "primarily intended as [a] source identifier[ ]." The record suggests that the Cats Coming and Going design was "primarily aesthetic." Indeed, there is no evidence that plaintiffs intended their design to identify the source of the tee-shirts. Accordingly, the court will grant defendants' motion for summary judgment as to plaintiffs' trade dress claim.

### V

Defendants' memorandum of law in support of their motion for summary judgment says that plaintiffs' common law unfair competition claim is a claim for "reverse passing off" and is thus preempted by the Copyright Act, 17 U.S.C. § 501 *et seq.* Defendants in their reply memorandum abandon this argument and urge dismissal of these state claims "for the same reasons" that their Lanham Act claims should fail. For reasons already stated the court applies New York law to this issue.

### Passing Off

■ Under New York law, the "essence" of an unfair competition claim is "the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Milstein,* 58 F.3d at 34. Such a claim therefore differs from a Lanham Act claim for passing off, which, as noted above, does not require bad faith or an intent to deceive.

■ The record shows that defendants solicited orders for their tee-shirt by circulating a sample that differed at most "only slightly" from plaintiffs' design and then filled those orders with a different design.

Although defendants' actions may have caused some confusion, the record does not suggest that they intended to mislead their customers.

When defendants distributed their sample tee-shirts, they did not know that they would be unable to fill the resulting orders with identical shirts. After learning that they could not reproduce the samples, they informed their purchasers that they would supply them with a different shirt.

Because defendants did not intend to confuse their purchasers or to mislead them as to the origin of their shirts, the court finds that they did not act in bad faith when they circulated the sample shirts. As a result, plaintiffs' "passing off" claim lacks an essential element.

### Trade Dress Infringement

■ Under New York law, trade dress receives protection, even without proof of secondary meaning, against practices "imbued with an odor of bad faith," including palming off, actual deception, and deliberate copying. *See Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 138 (2d Cir.1992). New York law protects only "distinctive" trade dress. *See 20th Century Wear, Inc. v. Sanmark–Stardust, Inc.*, 815 F.2d 8, 11 (2d Cir. 1987).

■ To obtain injunctive relief, plaintiffs need only show a likelihood of confusion. *See Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 952 (2d Cir.1980), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982). To recover damages, they must prove actual confusion. *See id.* at 955; *Vitabiotics, Ltd. v. Krupka*, 606 F.Supp. 779, 785 (E.D.N.Y.1984).

It is not clear that plaintiffs' trade dress is distinctive enough to merit protection under New York law. One authority says that trade dress receives such protection only if it is "distinctive enough to become recognized as a public guaranty of origin and quality." *See Feathercombs, Inc. v. Solo Prods. Corp.*, 306 F.2d 251, 257–58 (2d Cir.) (internal quotations omitted), *cert. denied*, 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1965). Plaintiffs' design is essentially a realistic portrayal of cats, but it is not so generic that it could never come to identify its source.

Although possibly distinctive, plaintiffs' design is not used in a way that traditionally identifies a product source. For this reason, the trade dress inherent in plaintiffs' design is entitled to protection only if purchasers have in fact come to identify the design with plaintiffs' product; that is, if the design has acquired secondary meaning.

In determining whether plaintiffs' trade dress has acquired secondary meaning, the court considers the factors listed in Part IV above. For reasons already stated, plaintiffs have not shown that their slogan has acquired secondary meaning and they have likewise failed to demonstrate that the trade dress in their tee-shirt design has acquired such meaning.

■ Even assuming, *arguendo*, that plaintiffs' trade dress is inherently distinctive or that it has acquired secondary meaning, the court finds that plaintiffs have not demonstrated a likelihood of confusion.

■ To assess the likelihood of confusion between products, the court considers: (1) the strength of the senior user's trade dress; (2) the similarity of the trade dresses; (3) the junior user's good faith; (4) evidence of actual confusion; (5) the proximity of the products; (6) the likelihood that the senior user will bridge the gap between the products; (7) the quality of defendant's product; (8) and the sophistication of buyers. *See Bristol–Myers Squibb Co.*, *supra*, 973 F.2d at 1043.

■ The strength of trade dress is measured by "the degree to which it indicates the source or origin of the product." *Id.* at 1044. As already stated, the design on plaintiffs' tee-shirts does not by itself indicate their source. The trade dress inherent in the design is weak at best.

The court has examined advertisements for both tee-shirts and finds that they create a similar overall impression. Although defendants' shirt has five rather than six cats and the cats have different markings and positions, their overall appearance is quite similar. But this general similarity is not enough for plaintiff to prevail on this point.

The question remains "whether the similarity between the two trade dresses will contribute to confusion as to the origin of the product." *Id.* at 1046.

Defendants print a Linda Lori copyright symbol and the Heads and Tails mark on each tee-shirt. They prominently display the Heads and Tails mark in their advertising. Because the similarities between the trade dresses lie in areas that do not usually denote a product's origin, and the source of defendants' tee-shirts is prominently displayed, the court finds that the similarity factor favors the defendants.

Despite the similarities between the designs, there is no evidence that defendants copied plaintiffs' trade dress to take advantage of their good will by confusing purchasers as to the origin of shirts. The court has noted above defendants' reasonable efforts to identify the source of their product. There is no proof that they have tried to mislead their customers into thinking that they sell shirts produced by Hep Cat.

Plaintiffs have provided no evidence of actual confusion. Indeed, the letters from Hep Cat's customers make clear that, while recognizing a similarity between the tee-shirts, these customers realized that the designs were different and that the shirts came from different sources.

Defendants say that they sell their tee-shirts mainly to large wholesalers and retailers and that plaintiffs sell primarily to individuals. The parties direct their efforts at different segments of the market, but there is some competition between them. Moreover, plaintiffs may eventually be able to compete in defendants' portion of the market.

Plaintiffs say that Hep Cat's products are superior to Linda Lori's. They support this assertion only by pointing out that Hep Cat's products are more expensive. On this record the court cannot conclude that there is an appreciable difference in quality.

Plaintiffs say that tee-shirt buyers are usually not particularly careful in examining the trade dress and that the court should therefore consider them unsophisticated and likely to be confused by similar trade dresses. The letters from Hep Cat's customers belie this contention. But even assuming, for the sake of argument, that individuals who buy tee-shirts do not focus on the designs and trademarks of the shirts they buy, the court finds that defendants sell primarily to large retailers and wholesalers. Such customers are not usually impulse buyers. On the contrary, it is likely that they examine carefully products that they may later market. They are hardly unsophisticated buyers prone to confuse two products.

Upon review of the relevant factors, the court concludes that there is no significant likelihood of confusion between plaintiffs' and defendants' tee-shirts. For this reason and the reasons stated above, plaintiffs have not proved trade dress infringement under New York's common law of unfair competition.

## VI

Defendant Janet Bruschetti seeks summary judgment on all claims including Count I alleging registered copyright infringement. She asserts that at all relevant times she was "merely an employee" of Linda Lori and Agents and should not be liable because she had no financial interest in either company and no power to supervise any infringing activity.

Individuals may incur liability for copyright infringement by corporations under two theories. If a party is unaware of infringing activity, she may be vicariously liable for the activity if she has "the right and ability to supervise [it] and also has a direct financial interest in [it]." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1163 (2d Cir. 1971). A party with knowledge of infringing activity may be liable as a "contributory infringer," if she "induces, causes, or materially contributes to the infringing conduct of another." *Id.*

Bruschetti has submitted an affidavit stating that she was at all times a salaried employee of Linda Lori and Agents and that she never held stock or any other direct financial interest in either company. Bruschetti says that she has no official title and that her duties have included bookkeeping,

taking orders, and handling customer complaints. She says that she has no input in the selection of designs and products for sale, but that she does implement Weiss's instructions about sales and shipping.

Weiss has submitted an affidavit echoing Bruschetti's statements. In particular, he says that Bruschetti has no ownership interest in either company, no financial interest in the sales of the shirts, and no input in the decision to sell the shirts.

Plaintiffs say that Bruschetti was more than a mere "salaried employee." They cite defendants' memorandum of law in support of their motion to transfer the case from the Eastern District of Wisconsin, which describes Weiss and Bruschetti as Linda Lori's "two principals." They also submit a 1994 Dun & Bradstreet credit report indicating that "Brushetti" is the secretary and treasurer of Linda Lori. Plaintiffs also note that Weiss has previously stated that he and Bruschetti "handled the details of sales and shipments of tee-shirts" and that "the business is chiefly operated by myself and [Bruschetti]."

Although there is a dispute over Bruschetti's title and responsibilities at Linda Lori, plaintiffs have not raised a real dispute as to her financial interest in the company and its sales. Plaintiffs ask the court to infer from the fact that Bruschetti may be secretary and treasurer of Linda Lori that she has a financial interest in the company. But many officers and directors are simply corporate employees and have no personal financial stake in their companies.

■■■ The court draws all reasonable inferences in plaintiffs' favor, but in view of defendants' sworn statements that Bruschetti has no financial interest in the company, it does not seem reasonable to infer such an interest from her position alone. Accordingly, plaintiffs may not recover from Bruschetti under a theory of vicarious liability.

■■■ The record shows that Bruschetti was aware of and materially contributed to the marketing, sale, and distribution of Linda Lori's tee-shirts. If these activities infringed plaintiffs' copyright, then Bruschetti will be liable as a contributory infringer. Thus, the court may not grant summary judgment in her favor on the copyright claim.

■■■ A corporate officer is personally liable for the trademark infringement of a corporation if she is the "moving, active conscious force behind [the corporation's] infringement." *Bambu Sales, Inc. v. Sultana Crackers, Inc.,* 683 F.Supp. 899, 913 (E.D.N.Y.1988) (citation and internal quotation marks omitted).

■■■ Defendants now say that Bruschetti is a mere employee with no control over decisions regarding design selection and sales, but earlier statements and submissions suggest that she was an officer of the corporation and played a central role in its management. Because of these inconsistencies, there are disputed facts concerning Bruschetti's position and responsibilities at Linda Lori and Agents. As a result, her motion for summary judgment as to the remaining Lanham Act claim will also be denied.

### VII

Defendants' motion to amend their answer is granted under the terms indicated in Part III above. The court will grant summary judgment dismissing Count II, except for plaintiffs' claim for passing off in violation of the Lanham Act. The court will also grant summary judgment dismissing Count III in its entirety. Defendant Bruschetti's individual motion for summary judgment dismissing Count I is denied.

So ordered.