**Kathleen BURDICK and Roger Burdick, Plaintiffs,**

v.

**David W. KOERNER, Ronald E. Fawcett, Koerner & Fawcett, Inc., d/b/a The Family Tree a/d/b/a W.I.T. Publishing Co., The Thought Institute, Inc., ABC Insurance Company, Dr. Michael Kaye, EFG Insurance Company, Nikolaus J. Faessler, Linda S. Faessler, Randolph Zimmerman, and Judy Pollard, Defendants.**

No. 96–C–547.

United States District Court,
E.D. Wisconsin.

Jan. 5, 1998.

1997, Printpack excluded Hancock from its NLRA claim.

Wayne M. Yankala, Mingo & Yankala, S.C., Milwaukee, WI, for Plaintiffs.

Robert Kasieta, The Kasieta Legal Group, LLC, Madison, WI, for Defendants.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

Presently before the court is a motion to dismiss defendants David Koerner, Dr. Michael Kaye, Nikolaus J. Faessler, Linda S. Faessler, Randolph Zimmerman and Judy Pollard under Rule 12(b)(6), Federal Rules of Civil Procedure. The parties have agreed that the motion to dismiss is more properly one for summary judgment under Rule 56(c), Federal Rules of Civil Procedure, because it includes matters outside the pleadings. Thus, I will treat the motion to dismiss as one for summary judgment. In addition to the motion for summary judgment, all of the defendants have filed a motion in limine seeking to exclude certain testimony at trial.

## I. MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. *See* Rule 56(c), Federal Rules of Civil Procedure. Under Rule 56(c), the movant must show the following: (1) no genuine issue of material fact exists, and (2) its entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Only "genuine" issues of "material" fact will defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

As defined by the United States Supreme Court, "material" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Id.* at 248, 106 S.Ct. at 2510. A dispute over such material facts is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (citing *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). If the evidence presented is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Id.* at 249–250, 106 S.Ct. at 2510–2511.

The parties have not complied with Local Rule 6.05 which obligates them to submit

proposed findings of fact when filing their respective briefs in connection with a summary judgment motion. Presumably, the parties' omissions were due to the fact that the defendants' motion was originally filed as a motion to dismiss. Notwithstanding the parties' failure to comply with the court's local rules, I will address the motion and resolve any factual issues based on the briefs and evidence before me because there are very few facts in dispute.

As a preliminary matter, the defendants argue that David Koerner should be dismissed from this action because he has filed bankruptcy, and, as a result, the automatic stay provisions of the Bankruptcy Code prevent the plaintiff from continuing to proceed with their claims against him. This portion of the motion has been "withdrawn" by the defendants because the bankruptcy court has lifted the automatic stay with respect to the instant action. Therefore, the portion of the motion for summary judgment seeking dismissal of the claims against Mr. Koerner will be denied.

In the complaint, the plaintiffs allege that defendants Dr. Michael Kaye, Nikolaus J. Faessler, Linda S. Faessler, Randolph Zimmerman and Judy Pollard, all members of the board of directors of Koerner & Fawcett, Inc., misappropriated and infringed Ms. Burdick's works, actively induced or participated in the infringements and/or financially benefitted from the infringing activity. (Complaint, ¶¶ 61–65.) In addition, the plaintiffs asserted that the board members are "directly, vicariously and/or contributorily and jointly and severally liable for the alleged infringements." (*Id.* ¶ 66.) In their motion for summary judgment, the director defendants argue that they are entitled to judgment as a matter of law because the undisputed evidence does not support a finding of personal liability for the alleged infringement on their part.

The parties have not identified any case law from the court of appeals for the seventh circuit discussing the standard for personal liability of an individual member of a board of directors in a copyright infringement action, and my own research has not uncovered any. Nevertheless, there is a significant amount of case law from other circuits which provides guidance on the issue.

The courts which have addressed the issue have determined that individuals may incur liability for the copyright infringement of a corporation under two theories: (1) vicarious liability; and (2) contributory liability. A party who is unaware of infringing activity on the part of the corporation may nonetheless be vicariously liable for that activity if he or she has the right and ability to supervise it and also has an obvious and direct financial interest in the infringing activity. *See Pinkham v. Sara Lee Corp.,* 983 F.2d 824, 834 (8th Cir.1992); *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.,* 845 F.2d 773, 781 (8th Cir.1988); *Southern Bell Tel. & Tel. Co. v. Assoc. Tel. Directory Publishers,* 756 F.2d 801, 811 (11th Cir.1985); *Gershwin Pub. Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1163 (2d Cir.1971). A party with knowledge of the infringing activity may be held liable as a contributory infringer if he or she directly participates in the infringing activity or "induces, causes, or materially contributes to the infringing conduct of another." *Grupke v. Linda Lori Sportswear, Inc.,* 921 F.Supp. 987, 998 (E.D.N.Y.1996) (quoting *Gershwin Publishing Corp.,* 443 F.2d at 1163).

The parties do not agree on the appropriate legal standard to be applied with respect to the vicarious liability theory of relief. The plaintiffs argue that the fact that the defendants are directors of Koerner & Fawcett, Inc., in and of itself, establishes that they had the ability and the right to supervise the alleged infringing activity of the corporation. This is so, according to the plaintiffs, because under Wisconsin law the board of directors is required to exercise all corporate powers of the corporation. Wis. Stat. § 180.0801(2) ("all corporate powers shall be exercised by or under the authority of" the board of directors.) In other words, the plaintiffs argue that in Wisconsin, personal liability attaches for a corporation's infringing acts simply as a result of a defendant's membership on the board of directors.

The plaintiffs cite no authority for the proposition that state law regarding the authority of the board of directors governs the determination of an *individual* director's personal liability under federal copyright law.

Under the principle espoused by the plaintiffs, an individual board member, with any financial interest in the corporation, would be personally liable for the infringing acts of the corporation even if he or she voted or otherwise acted against the infringing behavior. I do not believe that the law of Wisconsin or the federal copyright law contemplates such a harsh consequence merely because of one's membership on a board of directors.

Courts which have applied the general rule regarding vicarious liability of an individual board member for a corporation's copyright infringement have *not* predicated liability on mere membership on the board of directors. In *Van Halen Music v. Palmer*, 626 F.Supp. 1163, 1167 (W.D.Ark.1986), the district court found that there was no basis for imposing vicarious liability on the secretary of the corporation whose duties were merely administrative, and there was no evidence that she exercised any significant control over the infringing corporation's operation or that she made or participated in any decision regarding the purchase of a license allowing the corporation to use the copyrighted works. The court in *Playboy Enterprises, Inc. v. Starware Pub. Corp.*, 900 F.Supp. 438, 441 (S.D.Fla.1995) determined that the supervisory abilities of the president satisfied the test for vicarious liability where he admitted having the ability to supervise the sale, advertisement, and ordering of production of the infringing computer disk and the right at all times to stop such sale, advertisement and ordering. *See also RCA/Ariola Int'l Inc.*, 845 F.2d at 782 (president of infringing corporation did have right of supervision where he wrote letters instructing stores concerning the operation of the copiers which were used to commit the copyright infringement).

A recent case from the district court for the southern district of New York applying the vicarious liability rule in the context of the parent/subsidiary relationship is also instructive. In *Banff Ltd. v. Limited, Inc.*, 869 F.Supp. 1103 (S.D.N.Y.1994) the court rejected the plaintiffs' argument that the parent corporation, Limited, Inc., should be held liable for the infringing acts of its subsidiary because its status as the parent *alone* satisfied the requirement that it have the ability and right to control the actions of the subsidiary. *Id.* at 1107. Instead, the court determined that

to prevail against a parent corporation on the theory of vicarious copyright infringement, the plaintiff must present evidence that the parent has done more in relation to the infringing activity than simply be the parent. In more precise terms, the plaintiff must show that the parent has a direct financial interest in the infringing activity, and that the parent has the right and ability to supervise the subsidiary, which is evidenced by some continuing connection between the two in regard to the infringing activity.

*Banff*, 869 F.Supp. at 1110.

■ In my opinion, the better-reasoned case law demonstrates that in order to establish vicarious liability in the context of a claim for copyright infringement, a plaintiff must introduce evidence beyond a defendant's membership on a board of directors. Thus, a plaintiff must offer proof that an individual board member was sufficiently involved in the day-to-day operation of the company in order to establish that he or she had the right and ability to control the actions of the corporation.

Having determined the applicable legal standards, I must now apply the law to the facts.

### A. Dr. Kaye

■ In an effort to establish Dr. Kaye's direct participation in the alleged infringement, Ms. Burdick states in her affidavit that Dr. Kaye knew that she was writing materials regarding criminal thinking, behavior and habilitation theory for the corporation and was aware that she was going into business with Mr. Fawcett and Mr. Koerner. (Burdick Aff. ¶¶ 25 and 26.) In addition, Ms. Burdick asserts that Dr. Kaye reviewed some of her written materials. (Burdick Aff. ¶¶ 33 and 34.) Nothing in the record establishes that Dr. Kaye was aware of the corporation's alleged unlawful use of Ms. Burdick's works or that he participated in that unlawful use and induced others to do so.

■ The record is also devoid of evidence upon which Dr. Kaye could be held vicarious-

ly liable. Dr. Kaye had a financial interest in the corporation: he owned 9% of the corporate stock; he funded the corporation with his own line of credit; and he filed a claim in the corporate bankruptcy for either $50,000 or $70,000. (Aschenbrener Aff., Ex. D, Kaye Depo. at pp. 8, 9, 14 and 23.) However, aside from the fact that Dr. Kaye was a member of the board of directors and attended some meetings where the copyright issues surrounding Ms. Burdick's works were on the agenda, there is nothing in the record before me which shows that Dr. Kaye was involved, to any degree, in the day-to-day operations of the company. Thus, the plaintiffs have not pointed to any evidence which permits an inference that Dr. Kaye had the right and ability to supervise the corporation.

Therefore, because the plaintiffs have not met their burden with respect to their claim that Dr. Kaye is personally liable for the corporation's alleged copyright infringement, he is entitled to summary judgment in his favor.

### B. Linda and Nick Faessler

■ Linda and Nick Faessler are husband and wife. The evidence shows only that they were aware that Ms. Burdick was writing materials for the corporation. Ms. Burdick asserts that she told Ms. Faessler that she had written "narratives about the criminal thinking errors on . . . disks" and that Mr. Koerner and Mr. Fawcett needed written materials to sell. (Burdick Aff. ¶¶ 56 and 57.) This is hardly evidence of the Faesslers' direct involvement in the alleged infringing activities of the corporation. Missing from the record, is any evidence that the Faesslers knew that the corporation used and sold Ms. Burdick's works and that such conduct was unlawful. Also absent is any evidence indicating that the Faesslers participated in the copying, production or sale of her works. Furthermore, the plaintiffs have offered no evidence to contradict Nick Faessler's statement that he "never directed or participated in the sale of the adult and juvenile curriculums or any other items published or distributed by Koerner & Fawcett, Inc." (Nick Faessler. Aff. ¶ 5.) Hence, there is no evidence upon which the Faessler's could be found liable as contributory infringers.

·. ■ Similarly, the record lacks evidence which suggests that the Faesslers are vicariously liable for the corporation's alleged infringement. The plaintiffs have shown the requisite financial interest on the part of the Faesslers insofar as they were shareholder's of 8% of the stock of the corporation. However, the plaintiffs have not shown that they had the right and ability to control the company. Although the Faesslers were members of the board of directors, there is no evidence to suggest that they played a part in the day-to-day affairs of the corporation or that they were involved in the sale of any of the items published or distributed by Koerner & Fawcett, Inc.

For these reasons, the Faesslers are entitled to summary judgment in their favor on the plaintiffs' claims.

### C. Randolph Zimmerman

■ Ms. Burdick alleges that Mr. Zimmerman directly participated in the infringement of her work. In her own affidavit, Ms. Burdick states that a publication of the corporation relating to juvenile and adult criminal thinking which lists Mr. Zimmerman as the author actually incorporates her work. She alleges that the " 'narratives' in the juvenile curriculum claimed to be authored by Zimmerman were derived directly from [her] work. Zimmerman had little if any original input." (Burdick Aff. ¶ 53.) In addition, she states that Mr. Zimmerman was aware of her work and had access to it because they were working together in developing the juvenile curriculum. (Burdick Aff. ¶¶ 50–53.) In contrast, Mr. Zimmerman states that he has never seen any written work created by Ms. Burdick and that the disputed portions of the juvenile curriculum were written based upon his own knowledge of the criminal personality and not drawn from any of Ms. Burdick's materials. (Zimmerman Depo. pp. 14–15.)

In view of the contrasting versions of events concerning the authorship of the juvenile curriculum publication, I find that a material dispute exists over whether Mr. Zimmerman was aware of and materially contributed to the improper production of Ms. Burdick's written works. Because the plaintiffs have produced evidence upon which

a jury could find Mr. Zimmerman liable as a contributory infringer, summary judgment in his favor on the plaintiffs' claims is not appropriate.

### D. Judy Pollard

At all relevant times, Ms. Pollard was an employee of Koerner & Fawcett, Inc. Her deposition reveals that her financial interest and role in the company was minimal; she owned one share of stock which Koerner & Fawcett, Inc. gave to her as a form of compensation and, as a member of the board of directors, her role was limited to taking the minutes at the board of directors meetings. (Pollard Depo. pp. 6 and 7.) In fact, Ms. Pollard was not aware that she was a member of the board of directors until she was informed of that fact by another individual. (Pollard Depo. p. 7.)

The plaintiffs allege that through her secretarial duties at Koerner & Fawcett, Inc., Ms. Pollard became a direct participant in the corporation's infringing activities. Specifically, Ms. Burdick avers that Ms. Pollard, as the corporation's "only in-house typist," revised the author page of *The Criminal Thinker*—the book Ms. Burdick allegedly wrote—to list "Koerner and Fawcett" as the authors. (Burdick Aff. ¶ 45.) Ms. Burdick also states that Ms. Pollard was aware that Ms. Burdick was the actual author because she had transcribed some of Ms. Burdick's notes. (Burdick Aff. ¶¶ 39 and 40.)

In my opinion, the undisputed evidence fails to demonstrate that Ms. Pollard is personally liable for the corporation's alleged infringing activities. While Ms. Pollard is shown to have revised the name of the author on Ms. Burdick's works, there is no cogent evidence in the record to establish that Ms. Pollard was aware that such revision was not agreed to by Ms. Burdick or was otherwise improper. Without more, her employment as a typist at Koerner & Fawcett, Inc. cannot be said to have "materially contributed to" the sale and distribution of Ms. Burdick's works. *See Grupke*, 921 F.Supp. at 999.

The uncontested evidence that Ms. Pollard's activity on the board of directors was limited to taking the minutes of the board meetings supports the conclusion that she did not have the right and ability to control the operation of the corporation so as to be held vicariously liable for the corporation's actions. Ms. Pollard is entitled to summary judgment in her favor on the plaintiffs' claims.

## II. MOTION IN LIMINE

Originally, a jury trial was scheduled to commence in this case on July 14, 1997. In preparation for that, the defendants filed a motion in limine seeking five evidentiary rulings from the court in advance of trial. Subsequently, the jury trial was adjourned and rescheduled to Monday, June 29, 1998. Although the jury trial in this case is approximately six months away, I believe it is appropriate to resolve the evidentiary issues before me at this time.

### A. Evidence Regarding Jarret Strawn

The defendants ask the court to enter an order excluding any evidence concerning Jarret Strawn. Mr. Strawn was employed by Rock Valley Correctional Programs ["RVCP"] during the same time period as Mr. Fawcett and Mr. Koerner. According to Mr. Faessler's deposition, Mr. Strawn was fired by Mr. Fawcett for being disrespectful to correctional clients of RVCP. The defendants seek exclusion of evidence related to Mr. Strawn on the ground that it is not relevant. Rule 402, Federal Rules of Evidence.

The plaintiffs maintain that evidence regarding the termination of Mr. Strawn by Mr. Fawcett is relevant and admissible under two theories: (1) the evidence proves that Mr. Fawcett's conduct is a habit or routine practice under Rule 406, Federal Rules of Evidence; and (2) the evidence is proof of motive, preparation, plan knowledge or absence of mistake or accident under Rule 404, Federal Rules of Evidence.

Rule 406, Federal Rules of Evidence provides that:

> Evidence of the habit of a person or of the routine practice of an organization, ... is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

According to the Advisory Committee Notes to Rule 406, habit "describes one's regular response to a repeated specific situation." The notes also state that "equivalent behavior on the part of a group is designated 'routine practice of an organization' in the rule."

The court of appeals for the seventh circuit had stated that "before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Thompson v. Boggs*, 33 F.3d 847, 854 (7th Cir.1994), *cert. denied*, 514 U.S. 1063, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995), (quoting *Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1293 (7th Cir.1988)). In addition, the court of appeals has recognized that in determining whether a behavior pattern has developed into a habit, two factors are considered controlling: adequacy of sampling and uniformity of response. *Thompson*, 33 F.3d at 854. These factors "focus on whether the behavior at issue occurred with sufficient regularity making it more probable than not that it would be carried out in every instance or in most instances." *Id.* (quoting *United States v. Newman*, 982 F.2d 665, 668 (1st Cir.1992), *cert. denied*, 510 U.S. 812, 114 S.Ct. 59, 126 L.Ed.2d 28 (1993)).

■ The plaintiffs contend that evidence related to Mr. Fawcett's termination of Mr. Strawn shows "Fawcett's business custom to wrongfully terminate and oust people when he is in a position of self-perceived power." In my opinion, the evidence related to Mr. Strawn's termination does not establish that Mr. Fawcett *regularly* responds by improperly ousting employees to such a degree that his conduct is "semi-automatic" in nature. Lacking from the plaintiffs' submissions is any information regarding the specificity of Mr. Fawcett's conduct with respect to Mr. Strawn's termination from which the court can evaluate the frequency and uniformity of Mr. Fawcett's response. Thus, the plaintiff has failed to present evidence from which the court can conclude that Mr. Fawcett's behavior constitutes a habit under Rule 406.

■ Nor do I find that the evidence related to Mr. Strawn is admissible under Rule 404(b) which allows a party to introduce evidence of other wrongs or acts for purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence of other bad acts is not admissible under Rule 404(b) to prove "the character of the person in order to show action in conformity therewith ...." The plaintiffs assert that the disputed evidence is admissible to show that Mr. Fawcett was "motivated, prepared and planned to dominate his own business—but it was done through the repeated wrongful misuse of people, their money and their property."

The plaintiffs' assertion is unpersuasive insofar as they have failed to articulate how, if at all, Mr. Strawn's termination was part of any plan or scheme to dominate his business at the expense of Ms. Burdick. The issues in this case revolve around whether the defendants infringed upon *Ms. Burdick's* copyright and whether they violated their contracts with *Ms. Burdick*. Without a stronger demonstration that Mr. Strawn's testimony is related to these issues, it is likely that the jury would use the evidence regarding Mr. Fawcett's termination of Mr. Strawn as evidence of Mr. Fawcett's character, which is precluded under Rule 404(b).

Therefore, because the plaintiffs have failed to demonstrate that evidence concerning Mr. Strawn and his termination is relevant to the instant lawsuit, I will grant the defendants' motion to exclude it.

**B. Evidence of Ron Fawcett's Temporary Termination From RVCP**

A little background is necessary before I address the merits of this portion of the defendants' motion. Joan Kashew Hutchins is listed on the plaintiffs' original list. (The parties have until January 26, 1998, to file new witness lists because the original scheduling order was revised when the scheduled July 14, 1997, trial was adjourned.) According to the defendants' submissions, Ms. Hutchins was the executive director at RVCP when Mr. Fawcett was the clinical director at RVCP. Ms. Hutchins allegedly fired Mr.

Fawcett from RVCP over a disagreement between them relating to missing RVCP funds. Ms. Hutchins' termination of Mr. Fawcett was ultimately overruled by the RVCP board of directors. The board offered Mr. Fawcett his job back and terminated Ms. Hutchins. Mr. Fawcett did not accept the job offer; instead, he started a new business with Mr. Koerner.

The defendants ask the court to exclude evidence concerning disagreements between Mr. Fawcett and Ms. Hutchins at RVCP, Mr. Fawcett's temporary termination from RVCP, and any evidence concerning the reasons underlying the departure of Mr. Fawcett from RVCP, other than to start their own business. The basis for such request is that the evidence is not relevant to the issues in this case and is misleading and prejudicial.

On the other hand, the plaintiffs argue that the disputed evidence is admissible under Rule 406 as evidence of Mr. Fawcett's habit to misuse people's money. In addition, they contend that such evidence is admissible to prove motive, preparation and absence of accident under Rule 404(b) as well as to impeach Mr. Fawcett.

■ That Mr. Fawcett may have misappropriated money while employed at RVCP does not establish that he has a habit of misappropriating other people's money. Once again, the plaintiffs have failed to provide the court with any details surrounding the alleged misappropriations. Thus, this court can not properly conclude that Mr. Fawcett's behavior in connection with his temporary termination from RVCP was "semi-automatic" in nature. *Simplex, Inc.*, 847 F.2d at 1293. The plaintiffs' assertions that Mr. Fawcett also misappropriated funds belonging to Dr. Kaye and H. Dan Wright are not compelling as they are short on detail, conclusory and unsubstantiated. Therefore, the challenged evidence is not admissible as evidence of habit under Rule 406.

■ The plaintiffs contend that the disputed evidence is also admissible to show "motive, preparation, plan knowledge or absence of mistake or accident," but they fail to articulate how such evidence is germane to any one, much less all, of those issues. Further, the plaintiffs show no connection between the events surrounding Mr. Fawcett's termination and departure from RVCP and the events involved in the case at hand. Thus, I find that the plaintiffs have failed to prove that this evidence is admissible under Rule 404(b).

■ The most persuasive argument advanced by the plaintiffs in support of admissibility is that it is relevant to impeach Mr. Fawcett's assertion that he left RVCP merely because he wanted to start his own business. Assuming Mr. Fawcett testifies at trial that his decision to leave RVCP was motivated only by his desire to start his own business, evidence concerning his termination and alleged misappropriation of funds would arguably impeach his testimony. Accordingly, I will deny the defendants' request for an order excluding evidence concerning Mr. Fawcett's termination and departure from RVCP. Such evidence may become admissible to the extent that it could impeach the testimony of Mr. Fawcett if he offered testimony concerning his decision to leave RVCP.

### C. Evidence Concerning H. Dan Wright

The defendants argue that the plaintiffs should not be permitted to introduce evidence concerning H. Dan Wright, his relationship with Koerner & Fawcett, Inc., his withdrawal from the corporation and his judgment against Koerner & Fawcett, Inc. in an unrelated action. Mr. Wright was an initial investor in Koerner & Fawcett, Inc. and a board member. Sometime between late 1995 and early 1996, Mr. Wright withdrew from the corporation allegedly due to a dispute over business management. Mr. Wright commenced a lawsuit against Koerner & Fawcett, Inc., Mr. Fawcett and Mr. Koerner alleging that Mssrs. Koerner and Fawcett induced him to invest money into the corporation through promises which were never fulfilled. Mr. Wright received a judgment in an undisclosed amount against the defendants in that lawsuit.

■ The plaintiffs argue that evidence concerning Mr. Wright and his lawsuit is relevant under Rule 406 to prove that "Koerner and Fawcett's inducing investments through false promises is a habit or routine

practice.... [and] ... their business custom to induce investments through false promises." (Brief in Response to Motion in Limine, p. 5.) Once again, the plaintiffs do not satisfy their burden of identifying the circumstances surrounding Mr. Wright's dealings with Mr. Fawcett, Mr. Koerner or the corporation. Without such information, I cannot evaluate the nature, frequency or uniformity of the defendants' responses to a given situation. As a result, I am unable to conclude that the conduct at issue amounts to a habit or routine business practice under Rule 406. The defendants' motion to preclude such evidence will be granted.

### D. Testimony Concerning David Koerner's Bankruptcy

The defendants seek an order excluding evidence regarding David Koerner's bankruptcy on the ground that "Dave Koerner is entitled to be dismissed from this action because of the automatic bankruptcy stay making any testimony regarding Dave Koerner's bankruptcy irrelevant and inadmissible at trial ...." (Brief in Support of Motion in Limine, pp. 3 and 4.) The bankruptcy court has lifted the automatic stay against Dave Koerner with respect to this action. Therefore, the defendants' argument is without merit. I will deny this portion of the defendants' motion in limine.

### E. Evidence of Settlement Negotiations

The defendants argue that the court should exclude from evidence "correspondence between attorneys previously representing plaintiff ... who initially represented the defendants in attempting to resolve this matter prior to filing this lawsuit." The correspondence at issue are five letters attached as Exhibit A to the defendants' brief in support of their motion in limine. According to the defendants, this correspondence is inadmissible under Rule 408, Federal Rules of Evidence, because the letters were made in the course of attempting to settle the dispute between Ms. Burdick and Mr. Koerner and Mr. Fawcett.

Rule 408 provides that:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

The plaintiffs do not dispute the defendants' contention that the letters were made in the course of settlement negotiations. Rather, they argue that the letters should not be excluded in their entirety because the letters contain some factual admissions by the defendants. The plaintiffs maintain that those factual admissions are admissible because they are not "disputed claims" under Rule 408.

The plaintiffs' position is contrary to the purpose underlying Rule 408. As noted by the court of appeals for the seventh circuit, the purpose of Rule 408 is

to encourage settlement. The fear is that settlement negotiations will be inhibited if the parties know that their statements may later be used as admissions of liability.

*Kritikos v. Palmer Johnson, Inc.,* 821 F.2d 418, 423 (7th Cir.1987). Allowing the plaintiffs to introduce into evidence the admissions of fact made by the defendants in the letters would run counter to the policy of fostering freedom of communication in settlement negotiations. Therefore, because it is undisputed that the letters were made in connection with compromise negotiations, I will grant the defendants' request to exclude those letters, in their entirety, under Rule 408.

### ORDER

Therefore, IT IS ORDERED that the defendants' motion for summary judgment be and hereby is granted, in part, and denied, in part.

IT IS ALSO ORDERED that the defendants' motion for summary judgment be and hereby is granted with respect to the plaintiffs' claims against defendants Dr. Kaye, Ms. Faessler, Mr. Faessler and Ms. Pollard.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment be and hereby is denied with respect to

defendants Mr. Koerner and Mr. Zimmerman.

IT IS FURTHER ORDERED that the action against defendants Dr. Kaye, Ms. Faessler, Mr. Faessler and Ms. Pollard be and hereby is dismissed, with prejudice.

IT IS FURTHER ORDERED that the defendants' motion in limine is granted, in part, and denied, in part.

IT IS FURTHER ORDERED that the defendants' motion in limine be and hereby is granted to the extent that the plaintiff is precluded from introducing any evidence concerning the termination of Jarret Strawn.

IT IS FURTHER ORDERED that the portion of the defendants' motion in limine seeking to exclude evidence concerning Mr. Fawcett's termination and departure from RVCP is denied to the extent that such evidence may be admitted for the limited purpose of impeaching the testimony of Mr. Fawcett concerning his decision to leave RVCP.

IT IS FURTHER ORDERED that the defendants' motion in limine be and hereby is granted to the extent that the plaintiffs are not permitted to introduce evidence concerning H. Dan Wright, his relationship with Koerner & Fawcett, Inc., his withdrawal from the corporation and his judgment against Koerner & Fawcett, Inc., in an unrelated civil action.

IT IS FURTHER ORDERED that the defendants' motion in limine be and hereby is denied to the extent that it seeks an order excluding evidence regarding David Koerner and his bankruptcy proceeding

IT IS FURTHER ORDERED that the defendants' motion in limine be and hereby is granted to the extent that the letters attached as Exhibit A to the defendants' motion in limine are not admissible in accordance with Rule 408, Federal Rules of Evidence, because they were made in the course of settlement negotiations.

IT IS FURTHER ORDERED that each party shall bear its own costs in connection with these motions.