**ANN HOWARD DESIGNS,
L.P., Plaintiff,**

v.

**SOUTHERN FRILLS, INC., Defendant.**

**No. 95 Civ. 5415(RO).**

United States District Court,
S.D. New York.

Feb. 17, 1998.

Storch Amini & Munves, P.C., New York City, Bijan Amini, Jane Ettinger, for Plaintiff.

Kenyon & Kenyon, New York City, Stuart J. Sinder, Allen J. Baden, Joel N. Bock, for Defendant.

*OPINION AND ORDER*

OWEN, District Judge.

There is a large market in this country in which manufacturers decorate the outline of picture frames and other items by gluing miniature objects to the frames—such as a ship's wheel, a cowboy hat, a school child's slate or an apple—using various layouts and

---

themes. The objects, be they overlaying jigsaw puzzle pieces or various miniatures, are not designed by the frame manufacturers, but are bought from independent third-parties on the open market. The result of this process is that various producers of frames often use the same miniatures and similar puzzle pieces, gathering them around like ideas or themes, such as a miniature sailboat, an anchor, a sailor's hat, on top of puzzle pieces which form the rectangular frame. The consequence is that—without labelling—customers may very well be confused about which manufacturer produced the particular item being bought. Thus, underlying this case is the question whether copyright, trade dress, or competition law provides any one frame assembler with a proprietary right in anything beyond the *exact* arrangement of the objects used. Clearly, the answer is no.

Both parties here are producers of such thematically-decorated picture frames and business card holders. Plaintiff, Ann Howard Designs, L.P. ("Howard"), a New York corporation, sues defendant, Southern Frills, Inc. ("Southern"), a Texas corporation, seeking both an injunction and damages under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as asserting state law claims under N.Y. Gen. Bus. Law §§ 349–50 and unfair competition.[1] Southern responds to Howard's claims with its own Lanham Act claims, as well as numerous state law claims.[2] This memorandum, however, addresses Southern's motion for summary judgment under Fed.R.Civ.P. 56 on Howard's Copyright and Lanham Act claims and Howard's cross-motion for the same as to all of Southern's counterclaims.

Neither party was the first to produce the items that they sell. For instance, in 1989, one Martyne Rubin began nationally marketing similar decorative picture frames using jigsaw puzzle pieces around the rectangle with little miniatures on them. Her particular arrangements received press attention in various contexts. Indeed, it is on this record that, in 1990, Howard's president, Ms. Shari Ann Midler, received one of Ms. Rubin's frames as a gift, which—according to Ms. Midler—served as inspiration for Howard's eventual line of frames.[3]

Southern entered the market in 1990, at that time producing and selling, among other things, metal picture frames decorated with miniatures and rhinestones.[4] Howard thereafter entered the market in September 1992, putting out a line of picture frames as well. Howard's frames are decorated with jigsaw puzzle pieces and miniatures, arranged thematically along the border. Certain of its arrangements have been registered with the Copyright Office as of 1994. In 1995, Southern altered its frame line, switching from metal to less expensive acrylic frames and to puzzle pieces rather than the pricier rhinestones of its previous line. Howard claims that, by doing so, Southern "knocked off" Howard's line, violating Howard's copyright and trade dress rights. Southern, in turn, claims, among other things, that Howard's line violated Southern's pre-existing trade dress rights.

Summary judgment can only be granted if I find that "there is no genuine issue as to any material fact" such that either party is entitled to judgment as a matter of law. *Williams v. Crichton,* 84 F.3d 581, 587 (2d Cir.1996) (citing Fed.R.Civ.P. 56(c)). Thus, in regard to Howard's copyright claim, I must determine if there is a genuine issue regarding the validity of Howard's copy-

---

1. As such, this court has jurisdiction under 28 U.S.C. §§ 1331(a) (federal question jurisdiction) and 1338(a), (b) (trade mark jurisdiction and joined unfair competition). It is noted, as well, that diversity jurisdiction exists.

2. Southern's state law claims involve common law unfair competition, the Texas Deceptive Practices Act, Tex. Bus. & Com.Code, Ann. 17.01 *et seq.*, the New York General Business Law § 133 and § 349, the New York Arts & Cultural Affairs Law § 33.09, tortious interference with a business relation. Southern also seeks a declara-

tory judgment that Howard's copyright and trade dress claims are invalid.

3. The Rubin frame received by Ms. Midler was a lucite one, with jigsaw puzzle pieces and miniatures along its border. Def. Ex. C., p. 39; Ex. D, p. 35, Ex. E, p. 49.

4. Southern began marketing similarly decorated business card holders in approximately June 1992.

rights, and whether Southern has copied the constituent elements of Howard's frames that are original to Howard. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). I conclude that summary judgment is appropriate here because, although Howard holds valid copyrights, it cannot be argued that the similarity between the parties' frames runs to the copyrightable elements of Howard's work. *See Williams,* 84 F.3d at 587.

■ At the outset, one may not copyright an idea. It is the expression of an idea that receives copyright protection. *See Mazer v. Stein,* 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954); *Mattel, Inc. v. Azrak–Hamway International, Inc.,* 724 F.2d 357, 360 (2d Cir.1983). The concept of picture frames decorated with three-dimensional pieces—be they rhinestones, puzzle pieces or miniatures available from stock houses—is simply not copyrightable. Furthermore, although the Copyright Act does protect compilations,[5] that protection extends only to the elements of the work original to the compiler.[6] While Howard argues that Southern has "co-opted Ann Howard's creative choice" by getting into the marketplace and using some pieces that Howard had already bought and used, Howard holds no proprietary right

to the choice of rhinestones, puzzle pieces, miniatures or acrylic frames because it did not design any of those individual elements. Thus, in order for Howard to survive summary judgment, it needed to show facts that could reasonably establish both Southern's access to Howard's frames[7] and marketing of frames that are substantially similar to Howard's *exact* layouts. *See Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1002 (2d Cir. 1995).[8]

■ As indicated at the outset, the parties' frames are similar. For example, when comparing Howard's "Come Sail Away" frame with Southern's frame of like theme, I see two frames that, while of different size and perspective, are bordered with puzzle pieces, each using, among other miniatures, identical ship wheels, ships and sailor's hats obviously from the same vendor. The result is a substantial similarity that, using the term in the legal context, does not give way until one takes a closer look,[9] the question being is their similarity due to copyright infringement or to the nature of the industry from which both parties profit. I conclude that the latter controls, and there is no genuine issue that Howard's copyrights have been infringed. As such, Southern's motion for summary judgment on Howard's copyright claim is granted.[10]

5. Compilations are defined as works "formed by the collection and assembling of preexisting materials ... that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101.

6. That is, copyright protection runs only to "the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103.

7. Access, in one form or another, is not truly at issue here. Although Southern attempts a dispute on the issue, the record makes clear that the parties operate in a relatively contained market, their products being sold at the same trade shows and in a limited array of catalogues.

8. In this vein, I agree with Southern that this case is closely aligned with *Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 766 (2d Cir.1991). There, plaintiff designed and arranged the foreground of its fabric design, but

culled the background image from a document in the public domain. As such, the Court narrowed its comparison to the foreground image and arrangement. AHD urges that *Knitwaves, Inc.* should change my conclusion. That court considered the "total look and feel" of plaintiff's work where defendant's copy consisted of the whole of plaintiff's original design. Although I agree that Howard would have a case if it had designed or held a copyright for the individual objects on its frames, when I look to the total of Howard's design (again, the arrangements), I conclude that an ordinary observer could not find that Southern has appropriated Howard's arrangements.

9. Upon closer examination, the puzzle pieces are of different colors, many of the miniatures differ, and all objects are placed in different locations on the frames.

10. This, of course, applies as well to Howard's request for a preliminary injunction given that such an injunction cannot issue without a likelihood of success on the merits or serious issues requiring litigation with greater hardship flowing

Both parties have made challenged claims under the Lanham Act Section 43(a), 15 U.S.C.1125(a).[11] That section protects trade dress, a term encompassing a product's "composition, design, including size, shape, color, texture and graphics." *Mana Products, Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1068 (2d Cir.1995). Much for the same reasons that Howard cannot prevail on its copyright claim, both parties fail to establish viable trade dress claims.

■ Although I have noted that the parties' frames can be confusingly similar because of their elements, the parties' labelling and the nature of the market involved negate any trade dress claim. Each needed to establish an issue of fact suggesting that their frames are either "inherently distinctive" or have acquired secondary meaning in their market *and* that there is likelihood of confusion among Howard's customers. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615 (1992). But, even if either party could establish inherent distinctiveness or secondary meaning which is doubtful on this record, it is clear that neither can establish a true likelihood of confusion exists between the Howard and Southern frames.

■ The Lanham Act does not reach all product similarity. Any general similarity between the parties' frames is irrelevant, except to the extent that it confuses consumers as to the origin of the frames. *See Grupke v. Linda Lori Sportswear, Inc.*, 921 F.Supp. 987, 997–998 (E.D.N.Y.1996). Moreover, in this Circuit, trade dress protection extends only to those designs that are " 'likely to serve *primarily* as a designator of origin of the product.' " *Knitwaves, Inc.*, 71 F.3d at 1008 (emphasis added).[12] Here, there is only insubstantial evidence showing that their names are linked to any particular design.[13] In addition, all of Howard's frames have a felt backing, with inserts carrying their thematic title and Howard's name, along with copyright notice and the legend "Made in the U.S.A.". Southern's frames have no backing and are only sporadically titled, but are marked clearly with the words "Handcrafted by Southern Frills, Inc." and "Designed by Patti Strauss". Thus, while nothing on record even facially establishes that each parties' identity is linked to the composition of its frames, it is clear that their arguable single origin, flowing from non-protectable elements, is negated by the

---

to the plaintiff absent the injunction. *See Fisher–Price, Inc. v. Well–Made Toy Manufacturing Corp.*, 25 F.3d 119, 122 (2d Cir.1994).

11. Under 15 U.S.C. § 1125(a), damages can be sought by anyone who "in connection with any goods ... uses in commerce any word, term, name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods ... by another person." 15 U.S.C. § 1125(a).

12. I have looked to the following factors to determine the existence of consumer confusion, keeping in mind the protectable aspects here: (1) the strength of the parties' respective identities; (2) the similarity between the AHD and SFI products; (3) their proximity within the marketplace; (4) any evidence of actual confusion; (5) whether either party has acted in bad faith; (6) the quality of the parties' products; and (7) the sophistication of the relevant consumer group. *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). The only factor strongly supported by the record is that Howard and

Southern operate in close proximity within their market.

13. Howard has provided but two affidavits, one showing that the affiant clearly recognized the difference between the two parties' work, and neither providing an inference of actual confusion. Ms. Karen Johnson of Johnson's Frame Center in New York City does not indicate that the Howard and Southern frames are confusingly similar, stating solely that Southern's "Career" frame line has the "same look and feel" as those of Howard. In relation to the same Southern line, Mr. Richard Park, owner of Metro Frames in New York City, states that he approached Southern for its frames, due to their similarity to Howard's, after Howard refused to sell to him (another of its retail customers operates in close proximity to his shop). Significantly, Mr. Park avers that he then requested that Southern make changes in its design to bring it closer to that of Howard: "Specifically, I asked [Southern] to move its puzzle pieces inward, like [Howard] does, and to use fewer rhinestones in combination with more poly-resin pieces, as Howard also does." Although Mr. Park states that a Southern representative agreed to make the changes, there is no evidence on record that it did so.

explicit differentiating labelling appearing on each parties' frames.[14]

Additionally, both parties can claim the functionality defense. This defense arises when design choices "reflect cost and quality considerations" or when trade dress protection would "impinge upon rights of others to compete effectively in sale of goods." *Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 975, 977 (2d Cir.1987). *See also, Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) ("[A] product feature is functional ... if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage.") Both parties allude to cost considerations in their choice of puzzle pieces and rhinestones, as well as particular miniatures,[15] and—as noted in the first instance—to allow either party a proprietary right in the objects used on their frames would obviously have severe and inappropriate impact on the market of independent third-party vendors of the objects.

On this record, therefore, both parties' Lanham Act claims fall to summary judgment.[16]

Turning now to the balance of Howard's motion for summary judgment dismissing Southern's state law claims, the motion is granted. I agree with Howard that Southern has offered insubstantial and contradictory support for these claims, and that the claims border on frivolous. Howard is correct in noting that each of Southern's state law claims contains an element of "deception" or "unfairness" on Howard's part that the record simply cannot support. Indeed, in countering Howard's cross-motion, Southern does not really address this element. *Celo-*

*tex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, Howard is granted summary judgment as to Southern's state law counterclaims.

Finally, both of Howard's state law claims fall because of elements already determined as to federal trademark protection.[17] Although Southern has not challenged Howard's state law claims here, the relevant facts have been fully briefed and the record shows that those claims should fall as well.[18] As such, the balance of the complaint is therefore dismissed *sua sponte.*[19]

In sum, all claims and counterclaims are dismissed either on summary judgment or *sua sponte.*

So ordered.

---

Southern provided no objective evidence of market confusion.

**14.** "[I]n trade dress infringement suits where the dress inheres in a product configuration, the primary factors to be considered in assessing likelihood of confusion are the product's labeling, packaging, and advertisements." *Versa Products Company, Inc. v. Bifold Company (Mfg) Ltd.*, 50 F.3d 189, 203 (3d Cir.), *cert. denied* 516 U.S. 808, 116 S.Ct. 54, 133 L.Ed.2d 19 (1995).

**15.** Indeed, Howard no longer uses the exact layouts deposited with the Copyright Office due to cost and market availability concerns.

**16.** Again, this applies as well to Howard's request for injunctive relief. *See, supra,* note 10.

**17.** Howard has asserted claims under N.Y. Gen. Bus. Law §§ 349–50 and common law unfair competition.

**18.** For instance, the fact that Southern clearly labels its frames negates the claim that consumers have been deceived as to the frames' source or that Southern has practiced false advertising.

**19.** *See Moorish Science Temple of America, Inc. v. Smith,* 693 F.2d 987, 990 (2d Cir.1982). *Compare Perez v. Ortiz,* 849 F.2d 793, 798 (2d Cir. 1988).